NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL 952, Respondent.

No. 84–7355.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1985.

Decided April 18, 1985.

Christopher Young, N.L.R.B., Washington, D.C., for petitioner.

Jeffrey L. Cutler, Los Angeles, Cal., for respondent.

Before GOODWIN, REINHARDT and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

The National Labor Relations Board (the Board) invokes our jurisdiction under Section 10(e) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(e), and petitions for enforcement of its order finding the International Brotherhood of Electrical Workers, Local 952 (the Union) in violation of Sections 8(b)(1)(A) and 8(b)(2) of the Act, 29 U.S.C. §§ 158(b)(1)(A) and 158(b)(2), respectively. The Union imposed a substantial monetary fine upon one of its members, who was also an employer, for working alongside nonunion employees because it deemed such conduct to be in violation of the Union's constitution. The Board found the Union's conduct to be unfair labor practices under the Act. We grant the petition for enforcement.

FACTS

The facts are undisputed. From 1970 through October 1982, Donald Horton was a member of the International Brotherhood of Electrical Workers, Local 349 in Miami, Florida. Horton never became a member of Local 952, respondent in this case.

From 1978 until August 1982, Horton was a partner in Tri-Bar Electric, an electrical contracting firm in Ventura, California. In August 1982, Horton became the owner and sole proprietor of the firm. During the months of June through October 1982, Horton, along with four nonunion employees, performed electrical contracting work for a church in Ventura.

On July 14, 1982, the Union's business manager and financial secretary filed an internal union charge against Horton alleging that Horton, "owner of Tri-Bar Electric", had violated Article XXII, Section 3 of the IBEW constitution by working on a jobsite with "employees other than IBEW members." The Union sent Horton a notice of the charges and the scheduled Trial Board proceeding. Horton did not attend the proceeding.

By letter dated August 6, 1982, the Union informed Horton that the Trial Board had found him guilty of violating Article XXII, Section 4, of the IBEW Constitution.[1] For this violation the Union assessed a $20,000 fine "with $5,000 suspended for a period of two years, provided that Article XXII, Section 4 are (sic) not again violated in that time period."

In December 1982, Horton filed an unfair labor practice charge against the Union.[2] After a hearing, an ALJ concluded that the Union, by imposing the monetary assessment against Horton, had attempted to cause discrimination within the meaning of Section 8(a)(3) of the Act, and thereby violated Sections 8(b)(2)[3] and 8(b)(1)(A).[4]

1. Article XXII, Sections 3 and 4, of IBEW's Constitution provide:
   The acceptance of an application for membership, and the admission of the applicant into any L.U. (Local Union) of the I.B.E.W. constitutes a contract between the member, the L.U. and the I.B.E.W., and between such member and all other members of the I.B.E.W.
   Each applicant admitted shall, in the presence of members of the I.B.E.W., repeat and sign the following obligation: "I, .........., in the presence of members of the International Brotherhood of Electrical Workers, promise and agree to conform to and abide by the Constitution and laws of the I.B.E.W. and its local unions. I will further the purposes for which the I.B.E.W. is instituted. I will bear true allegiance to it and will not sacrifice its interest in any manner."

2. The ALJ found that Horton was an employer engaged in commerce within the meaning of Section 2(6) and (7) of the Act, 29 U.S.C. § 152(6) & (7) and that the Union was a labor organization within the meaning of Section 2(5), 29 U.S.C. § 152(5). These findings are not contested.

3. Section 8(b)(2) makes it an unfair labor practice for a union:
   to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.
   29 U.S.C. § 158(b)(2)
   Section 8(a)(3) prohibits:
   discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.
   29 U.S.C. § 158(a)(3).

4. Section 8(b)(1)(A) provides:
   It shall be an unfair labor practice for a labor organization or its agents—
   (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in [section 7]: *Provided,* that this paragraph shall

The Board affirmed the ALJ's findings and conclusions and adopted the ALJ's recommended order. The Board issued a cease and desist order and affirmatively directed the Union to: (1) rescind the assessment imposed upon Horton; (2) expunge from its records all references to the charges, trial, assessment and other action taken against Horton; (3) notify Horton in writing that it has complied with the actions required in (1) and (2) above; (4) post an appropriate notice regarding this matter; and (5) notify the Board in writing of the steps taken to comply with this order. Horton apparently has not paid the fine, nor has the Union attempted to enforce its decision.

## STANDARD OF REVIEW

■ We will enforce the Board's order if the Board's findings of fact are supported by substantial evidence in the record and if the Board correctly applied the law, even if we might have reached a different conclusion based on the same evidence. *NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 462–63 (9th Cir.1985); *American Distributing Co. v. NLRB*, 715 F.2d 446, 449 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). We recognize that the Board's interpretation of the Act is entitled to deference, and we will uphold it if reasonably defensible. *NLRB v. Carpenters Local Union No. 35*, 739 F.2d 479, 482 (9th Cir.1984). However, we will not "rubber stamp ... administrative decisions that [we] deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying [the] statute." *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965) (quoted in *Machinists Local 1327, etc. v. NLRB*, 725 F.2d 1212, 1215 (9th Cir.1984)).

## ANALYSIS

The Union urges us to deny enforcement of the Board's order on the ground that the monetary assessment it imposed against Horton was an internal union disciplinary matter protected by the proviso to Section 8(b)(1)(A) and therefore beyond the proscriptions of Sections 8(b)(1)(A) and 8(b)(2). We are unable to reach the Union's claim that its conduct is protected under the proviso to Section 8(b)(1)(A). The specific restriction of Section 10(e) of the Act, 29 U.S.C. § 160(e), forecloses judicial consideration of this claim.

■ Section 10(e) provides in relevant part: "No objection that has not been urged before the Board, its member, agent or agency, shall be considered by the court, unless the failure or neglect to urge such objections shall be excused because of extraordinary circumstances." The purpose of this provision is to ensure that the Board is given the opportunity to bring its expertise to bear on the issue presented so that we may have the benefit of the Board's analysis when reviewing the administrative determination. *Idaho Falls Consolidated Hospitals, Inc. v. NLRB*, 731 F.2d 1384, 1386 (9th Cir.1984).

■ After a searching review of the administrative record in this case, we are unable to conclude that the Union properly preserved this issue for judicial review. In the administrative proceedings the Union never argued that its conduct was protected under the proviso to Section 8(b)(1)(A). Nothing in the Board's decision so much as hints that the Board considered this objection to the unfair labor charge. Moreover, nothing in the record bears out the contention made at oral argument that the Board

not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein;
29 U.S.C. 158(b)(1)(A)
Section 7 provides:
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.
29 U.S.C. § 157.

implicitly ruled on this issue. In these circumstances, we are compelled to conclude that we are without jurisdiction to consider whether the Union's fine against a member/employer for violating the Union's constitution was protected conduct under the proviso to Section 8(b)(1)(A). *See* 29 U.S.C. § 160(e); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66, 102 S.Ct. 2071, 2082–83, 72 L.Ed.2d 398 (1982) (Court of Appeals was without jurisdiction to consider whether unions violated § 8(b)(4)(A) when they picketed to obtain subcontracting clause sheltered by the contracting industry proviso where issue was not raised in administrative proceeding); *NLRB v. Ochoa Fertilizer Corp.*, 368 U.S. 318, 322, 82 S.Ct. 344, 347, 7 L.Ed.2d 312 (1961) (failure or neglect of party to raise objection during administrative proceedings forecloses judicial consideration of the objection in enforcement proceedings, absent a showing of extraordinary circumstances); *NLRB v. International Ass'n of Bridge, Structural, Ornamental & Reinforced Iron Workers Union, Local 378*, 473 F.2d 816, 817 (9th Cir.1973) (generalized exceptions to examiner's order did not preserve for judicial review issue specifically presented for the first time in this court).

The Union also urges us to deny enforcement of the petition on the ground that the Board failed to prove the "intent" or "motive" element necessary to a finding of a violation under Section 8(b)(2). We disagree.

■ We are cognizant that not every union attempt to influence an employer's action, which in turn affects union membership, amounts to a violation of Section 8(b)(2). *NLRB v. Wismer & Becker, Contracting Engineers*, 603 F.2d 1383, 1388–89 (9th Cir.1979). To determine whether a union has violated Section 8(b)(2), the "true purpose" or "real motive" behind the union's actions should be ascertained. *Id.* (quoting *Lummus Co. v. NLRB*, 339 F.2d 728, 733–34 (D.C.Cir.1964)). A union's intent or motive may be inferred from the circumstances. *Id.; NLRB v. International Ass'n of Machinists*, 279 F.2d 761, 766

(9th Cir.), *cert. denied*, 364 U.S. 890, 81 S.Ct. 221, 5 L.Ed.2d 187 (1960). Where conduct, by its very nature contains implications of intent, "the Board may properly find that the encouragement or discouragement of union membership was the natural forseeable consequence of the conduct and that the action must have intended that result." *NLRB v. Wismer & Becker*, 603 F.2d at 1389 (quoting *Lummus Co.*, 339 F.2d at 734); *see also Radio Officers' Union*, 347 U.S. 17, 44–46, 74 S.Ct. 323, 337–339, 98 L.Ed. 455 (1954).

■ Here, there is substantial evidence in the record supporting the Board's conclusion that the "true purpose" of the fine was to cause or attempt to cause Horton, as an employer, to bring improper pressure to bear against his non-union employees. In the internal union charge against Horton, the Union expressly referred to Horton as the "owner of Tri-Bar Electric." Such an express reference is suggestive of the Union's true purpose in imposing the fine, especially when coupled with other factors present in the record. For example, the amount of the fine, $20,000, is of such magnitude as to suggest that it was imposed upon Horton as an employer, rather than as a member of the Union. The provision for a suspension of $5000 of that fine if Horton did not commit further violations of the Union's constitution could be understood as providing Horton with an incentive, as an employer, to compel his nonunion employees to join the Union or to fire them and replace them with Union members. In these particular circumstances, we are convinced that the Board reasonably inferred that the Union, by fining Horton, intended to cause him to discriminate against his nonunion employees in regard to tenure or hire.

Because we conclude that the Board reasonably interpreted the Act so as to include within the proscriptions of Section 8(b)(2) the conduct engaged in by the Union, we affirm the Board's finding that the Union violated Section 8(b)(2) by imposing a monetary penalty against Horton.

Finally, the Union challenges the Board's determination that the fine imposed upon Horton also contravened Section 8(b)(1)(A). The Union contends that the evidence does not support this conclusion. We note that the record is devoid of any evidence indicating that Horton's employees had any knowledge of the Union's conduct.

The Board explains that the Section 8(b)(1)(A) violation is derivative of the Section 8(b)(2) violation. Since the Union's disciplinary action against Horton had the foreseeable effect of causing discrimination against Horton's employees because they were not union members, the Board contends that such conduct could also "reasonably be characterized as tending to coerce and intimidate employees in the exercise of their Section 7 right not to join a union."

Having concluded that the Union's conduct violated Section 8(b)(2), we find it unnecessary to reach the merits of the Board's holding that the Union's conduct also violated Section 8(b)(1)(A). *See Sheet Metal Workers' International Ass'n v. NLRB*, 716 F.2d 1249, 1255 n. 2 (9th Cir. 1983).

The petition for enforcement is GRANTED.