**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 340, Respondent.**

**No. 84-7769.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1985.

Decided Jan. 22, 1986.

Andrew Tranovich and Daniel Pollitt, Washington, D.C., for petitioner.

Kathryn A. Sure, Wylie, Blunt, McBride, & Jessinger, San Jose, Cal., for respondent.

Before CHAMBERS, TANG, and BOOCHEVER, Circuit Judges.

TANG, Circuit Judge:

The NLRB has petitioned for enforcement of its order holding the International Brotherhood of Electrical Workers, Local 340 ("the Union") in violation of Section 8(b)(1)(B) of the National Labor Relations Act ("the Act") 29 U.S.C. § 158(b)(1)(B) (1982). The Union had fined three of its members for violating a union bylaw prohibiting union members from working for nonunion employers. The Board held that two of the members were supervisors under Section 2(11) of the Act, 29 U.S.C. § 152(11) (1982) and/or representatives of their employers for collective bargaining and grievance adjustment purposes within the meaning of Section 8(b)(1)(B) and that the Union discipline was thus an unfair labor practice ("ULP"). Although the Union had disclaimed interest in representing the employees of these employers, the Board held that it still had an intent to represent the employees, thus distinguishing the present case from *NLRB v. International Brotherhood of Electrical Workers, Local 73*, 714 F.2d 870 (9th Cir.1980) (*Chewelah*). We refuse to enforce the order.

## BACKGROUND

Royal Electric ("Royal") and Nutter Electric ("Nutter") are electrical contractors who belong to National Electrical Contractors Association, Inc. ("NECA"), an employer association authorized to bargain with the International Brotherhood of Electrical Workers, Local 340, the union of which the employees involved in this case are members. The collective bargaining agreement between NECA and the Union expired on May 31, 1981 and the Union struck on June 11, 1981. The Union disclaimed interest in representing NECA member employees on September 15, 1981 and NECA adopted the disclaimer the next day. The Union filed 17 representation petitions seeking to represent the employees of 17 NECA members in single employer units on September 25, 1981 but it did not then or subsequently file a petition with either Royal or Nutter. NECA signed a collective bargaining agreement with the National Association of Independent Unions ("NAIU") on October 1, 1981 and Nutter and Royal adopted the contract that same day.

The unfair labor practice charges in these cases arise from the Union's imposition of fines on three members who worked for Royal and Nutter. In one case the Administrative Law Judge ("ALJ") ruled

that the employee was not a supervisor within the meaning of the Act and thus the Union fine was not an ULP. The other two disciplinary fines are the subject of this petition for enforcement. The Union fined Albert Shoux a total of $8,200 based on a charge made December 20, 1982 that he was working for Royal, a nonsignatory employer. Shoux worked as a superintendent and had some supervisory or foreman responsibilities. The Union fined Ted Choate a total of $6,000 based on a charge made November 1, 1982 that he was working for Nutter, a nonsignatory employer. Choate was a vice president and estimator and the parties stipulated that he was a Nutter supervisor within the meaning of Section 2(11) of the Act.

The ALJ decided these consolidated cases on September 27, 1983. He found that Shoux and Choate were supervisors within the meaning of the Act and thus natural and potential representatives of their employers for the purposes of collective bargaining and adjustment of grievances. He found the Union fines of these members to be violations of Section 8(b)(1)(B), even though the Union had no existing collective bargaining relationship with Nutter or Royal because he held the Union had an intent to represent the employees of those employers. The Union filed exceptions to these findings and conclusions, the NLRB adopted the ALJ's order on August 14, 1984, and on November 8, 1984 it applied to this court for enforcement of its order.

## DISCUSSION

There are two prongs to our analysis of a Section 8(b)(1)(B) violation in such a case of union discipline. First we must determine the employment status of the disciplined union members because there can be no Section 8(b)(1)(B) violation unless the employees are supervisors and representatives of their employers for the purposes of collective bargaining and grievance adjustment. Second, we must determine whether the union discipline restrained or coerced the employer in the selection of its representatives.

## A. Supervisor Status

■ The question of supervisor status is a factual one and the determination of the Board is entitled to great deference and need only meet the substantial evidence test. *NLRB v. Sonoma Vineyards, Inc.,* 727 F.2d 860, 862 (9th Cir.1984). Both parties stipulated that Choate was a supervisor within the meaning of the Act, as defined in Section 2(11). As to Shoux's status, the Union contends that his position was that of a working foreman lacking standard supervisory authority and that its fine thus fell within the acceptable parameters of discipline for doing bargaining unit work for a nonsignatory employer. *See Florida Power & Light v. IBEW,* 417 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1970). The Board found that Shoux's duties of job assignments and lay-off decisions qualified him for supervisor status. There are specific evidentiary findings of Shoux's responsibilities supporting the determination of supervisor status. Thus, we affirm the Board's finding of supervisory status.

■ Supervisory status does not automatically mean that an employee is a representative of his employer for collective bargaining purposes. The Board's determination that Choate and Shoux were representatives derived from the application of two legal principles. One is that grievance adjustment is to be broadly interpreted to include adjustment of personal problems. *See Toledo Lithographers Locals 15–P and 272,* 175 N.L.R.B. 1072 (1969), *enf'd* 437 F.2d 55 (6th Cir.1971). Applying this principle, the Board held Shoux was a representative because he occasionally handled employees' personal problems on the job.

To find Choate a representative, the Board applied its "reservoir doctrine," which states that anyone who is a supervisor within the meaning of § 2(11) is a part of the "logical reservoir" from which an employer is likely to select his representatives for collective bargaining or grievance adjustment. The doctrine's development was explained by the Third Circuit in *Newspaper Guild, Erie Newspaper Guild, Lo-*

cal 187 v. NLRB, 489 F.2d 416 (3d Cir. 1973), which noted that the doctrine does not mean that every "§ 2(11) supervisor *automatically* become[s] a § 8(b)(1)(B) representative. Every case requires an evidentiary basis from which § 8(b)(1)(b) status may be inferred." *Id.* at 422. (emphasis in the original). The Supreme Court limited the applicability of the reservoir doctrine in *Florida Power & Light,* 417 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1970). *See e.g. NLRB v. Rochester Musicians Association, Local 66,* 514 F.2d 988, 992 (2d Cir.1975) ("*Florida Power* effectively undermined [the doctrine's] conceptual basis.") Today the doctrine requires that the inquiry focus on whether union sanctions "may adversely affect the supervisor's performance of his collective-bargaining or grievance-adjustment tasks and thereby coerce or restrain the employer contrary to § 8(b)(1)(B)." *American Broadcasting Companies, Inc. v. Writers Guild,* 437 U.S. 411, 430, 98 S.Ct. 2423, 2434, 57 L.Ed.2d 313 (1978) ("*ABC*"). We defer to the Board's factual findings on this issue and affirm that Shoux and Choate were representatives of their employers.

## B. Restraint or Coercion

■ Fines imposed on representatives may constitute prohibited coercion because the effect of the discipline may be to deprive an employer of the services of his representative. *ABC,* 437 U.S. at 433–437, 436 n. 36, 98 S.Ct. at 2435–2438, 2437 n. 36. The general rule of *ABC* was announced in the context of an ongoing strike, and this court has held that when a union does not represent or intend to represent the complaining company's employees there can be no Section 8(b)(1)(B) violation when a union disciplines members even if they are designated bargaining representatives. *NLRB v. International Brotherhood of Electrical Workers,* 714 F.2d 870, 871–72 (9th Cir.1980) (*Chewelah* ). We believe *Chewelah* controls and is dispositive of the issue in this case.

The central question is whether the union demonstrated an intent to represent the employees of the nonsignatory employers. This is a factual inquiry reviewable by the substantial evidence standard. *Sonoma Vineyards,* 727 F.2d at 862. Both parties agree that the Union did not have a collective bargaining relationship with Nutter or Royal. They disagree about whether it intended to represent their employees. The Union argues that it demonstrated a lack of intent to represent Nutter and Royal employees when it filed a disclaimer of interest on September 15, 1981. The Board held the Union demonstrated an intent to represent evidenced by the Union business manager's testimony that at the time the Union dissolved its collective bargaining relationship with the multi-employer group NECA, it wanted to bargain with a new association comprised of some former NECA members. Thus the Board attempted to distinguish *Chewelah* and found the Union's purpose in imposing the fines on its members was to force employers out of NECA and into bargaining with the Union on a different basis.

Although this factual inference is entitled to deference as "peculiarly the kind of determination that Congress has assigned to the Board," *ABC,* 437 U.S. at 432, 98 S.Ct. at 2435, even a deferential standard does not require us to accept an inference we find logically insupportable. We cannot follow the Board's leap from a general statement of organizing interest made in September 1981 and fines imposed in November and December 1982 to a conclusion that the Union thereby engaged in "a course of conduct designed to cause the 'good' employer-members of NECA to abandon NECA multi-employer bargaining and to bargain on a single employer basis or to form a new association" in violation of Section 8(b)(1)(B). We hold that where a Union has filed a disclaimer of interest, and has made no subsequent organizing efforts, its discipline of members fully a year after the termination of the bargaining relationship between the Union and the employers cannot reasonably be construed as an effort to restrain or coerce the employ-

er. We require some evidence of specific overt acts such as picketing, handbilling, making statements of interest to the employers, or passing out opposition cards to find a desire to represent these particular employees.[1] Here there was no evidence of such an intent, but only a stale general statement, made at the time the collective bargaining relationship with NECA was terminated, that the Union would like to bargain with a new association. Since we might posit that a generalized desire to bargain is an essential characteristic of all unions, we require something more to support a specific finding of intent to represent.

## C. Judicial Notice

We need not reach the final issue raised in the Union's appeal from the Board's order. The Union contends that the ALJ improperly took judicial notice of evidence contained in decisions reached in other cases arising from the same general situation and involving the Union and other contractors as parties. Because we have found the ALJ did not have sufficient evidence to support his conclusion about the Union's intent to represent, we need not decide whether he abused his discretion in relying upon the evidence developed in other hearings.

## CONCLUSION

We deny enforcement of the NLRB's order because although we agree with the Board's determination of Choate's and Shoux's status as representatives of their employers, we do not find sufficient evidence of the Union's intent to represent the employees in this case.

---

1. The specified acts are cited as representative only and are not intended to be all inclusive.