**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION # 46, AFFILIATED WITH the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Respondent.**

No. 85–7146.

United States Court of Appeals, Ninth Circuit.

Submitted May 20, 1985.

Argued Dec. 6, 1985.

Decided July 1, 1986.

David Fleischer, N.L.R.B., Washington, D.C., for petitioner.

Hugh Hafer, Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for respondent.

On Application for Enforcement of an Order of The National Labor Relations Board.

Before ALARCON and REINHARDT, Circuit Judges, and STEPHENS, District Judge *.

STEPHENS, District Judge:

Robert Witty joined the International Brotherhood of Electrical Workers Local Union No. 46, affiliated with the International Brotherhood of Electrical Workers, AFL–CIO (the Union) in 1980. Until May of 1983, he was employed by Commercial Electrical Contractors (CEC) as an electrician and/or operations manager.

David Sabey owned a majority of the stock of both CEC and a newly-formed electrical contracting firm that provided services for general contractors, PAC, Inc. Sabey offered Witty the position of president of PAC. Witty accepted and resigned from CEC on April 15, 1983, effective May 14, 1983. He became President and Operations Manager/Administrator of PAC. Witty did not own any of the stock of PAC, nor did he share in its profits; he was paid by a fixed salary. Along with performing other duties for PAC, Witty established labor relations, set wage rates, hours of employment and benefits for employees, addressed wage or discrimination claims on behalf of PAC, and made final hiring decisions.

On April 14, 1983, Witty requested a "participating" withdrawal card from the Union which enabled him to remain eligible for death and pension benefits. The Union approved his request a few days after April 15. The Union subsequently discovered that PAC and CEC were owned by the same individual, and that Witty was acting

* The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

as president of PAC. It filed internal union charges against Witty, claiming that he was working for an employer which did not have a contract with the Union in violation of its local rules and its international constitution. The Union also filed an unfair labor practice charge with the National Labor Relations Board (NLRB), alleging that Witty was operating PAC as a non-union alter ego of CEC.

The Union notified Witty by mail that he was to appear before its trial board on August 2, 1983, to answer the charges of violating Union local rules and its international constitution. The day before the hearing, Witty hand-delivered a letter to the Union which stated that he had been unaware that working for PAC violated Union rules and that he would not appear at the hearing because, from past experience with the Union, he did not think that the hearing would be impartial. The Union informed Witty on August 3, 1983, that he had been tried *in absentia*, been found guilty of violating certain provisions of the Union's local bylaws and international constitution, and been fined $16,000. The letter also informed Witty that one-half of the fine would be suspended if Witty signed a contract on behalf of PAC with the Union within 30 days and rescinded his withdrawal. Witty failed to appeal the imposition of the fine to the International Union.

After the Union trial and fine, Witty filed a charge with the NLRB alleging that the imposition of the fine by the Union violated Section 8(b)(1)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(B), which makes it unlawful for a union "to restrain or coerce ... an employer in the selection of his representatives for the purpose of collective bargaining or adjustment of grievances." The Regional Director of the NLRB dismissed the Union's alter ego charge and issued a complaint on Witty's charge.

On March 29–30, 1984, the Section 8(b)(1)(B) charge was heard before an administrative law judge. The ALJ refused to hear evidence regarding PAC's relationship to other entities or persons including CEC. The ALJ decided that since Witty was a representative of PAC for purposes of collective bargaining and the adjustment of grievances under Section 8(b)(1)(B), the Union had violated that Section by fining Witty because he worked for an employer that did not have a contract with the Union.

The ALJ's order, subsequently adopted by the NLRB, required the Union to cease and desist from the prohibited behavior. The order also instructed the Union to rescind the fine levied against Witty and to expunge from the Union's records all documents regarding the internal Union charge, trial and fine of Witty. The NLRB has applied for enforcement of the order.

An NLRB order will be enforced if the Board's findings of fact are supported by substantial evidence in the record and if the Board correctly applied the law, even if the Court of Appeals might have reached a different conclusion based on the same evidence. *NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 462–63 (9th Cir.1985). The NLRB's interpretation of the National Labor Relations Act is entitled to deference in the Court of Appeals, and the Court will uphold it if it is reasonably defensible. However, the Court will not rubber-stamp administrative decisions that it deems inconsistent with statutory mandate or that frustrate Congressional policy underlying the statute. *NLRB v. International Brotherhood of Electrical Workers Local 952*, 758 F.2d 436, 439 (9th Cir.1985).

A finding of violation of Section 8(b)(1)(B) will be upheld only if two distinct factual circumstances appear from the evidence in the record. First, there must be an individual who represents the employer in collective bargaining or grievance adjustment. Second, the union must have engaged in conduct which restrains or coerces the employer in its selection of that individual as its representative for those purposes. *NLRB v. International Brotherhood of Electrical Workers Local 340*, 780 F.2d 1489, 1491 (9th Cir.1986). Both direct union pressure affecting the selection of the representative or the willingness of that individual to act as a repre-

sentative, and indirect pressure on the employer's representative to coerce the manner of conducting negotiations or grievance processing will violate the statute. *American Broadcasting Companies v. Writers Guild of America*, 437 U.S. 411, 436, 98 S.Ct. 2423, 2437, 57 L.Ed.2d 313 (1978); *Florida Power and Light Company v. International Brotherhood of Electrical Workers Local 641*, 417 U.S. 790, 800–02, 94 S.Ct. 2737, 2742–43, 41 L.Ed.2d 477 (1974); *NLRB v. International Brotherhood of Electrical Workers Local 73*, 714 F.2d 870, 871 (9th Cir.1980).

The Union argues that CEC created a sham entity, PAC, to avoid collective bargaining obligations under the Union's contract with CEC, and that Witty should not have been immunized from knowingly operating such a sham entity. The Union asserts that pressure to compel an employer to recognize a lawful labor contract obligation is not an unfair labor practice under Section 8(b)(1)(B).

The ALJ's determination that Witty had the authority to negotiate and sign a collective bargaining agreement with a labor organization on behalf of PAC is supported by his testimony describing his duties at PAC. In finding improper coercive activity by the Union, the ALJ determined that there was a direct link between the fine imposed on Witty because he was employed by a non-union employer, and his collective bargaining authority. The ALJ reached this conclusion because the Union expressly stated that it would reduce the fine if Witty would sign a contract on behalf of Pac with the Union within thirty days.

When union members are disciplined for working for a non-union company, "[f]ines imposed on representatives may constitute prohibited coercion because the effect of the discipline may be to deprive an employer of the services of his representative." *NLRB v. IBEW Local 340*, 780 F.2d at 1492, citing *American Broadcasting Companies v. Writers Guild*, 437 U.S. at 430, 98 S.Ct. at 2434. However, as stated in *NLRB v. IBEW Local 73*, 714 F.2d at 871–72:

The union does not violate Section 8(b)(1)(B) by disciplining one of its members for working for a nonunion employer in violation of union bylaw, even though that member is also the bargaining representative of his employer, if the union neither represents nor has demonstrated an intent to represent the employer's employees. The case may be different if there is evidence that the union's actual purpose in enforcing its bylaw was to interfere with the employer's selection.

In *NLRB v. IBEW Local 340*, 780 F.2d at 1492–93, this Court, following the holding quoted above, refused to enforce an NLRB order finding a union in violation of Section 8(b)(1)(B) because there was no evidence of specific overt acts by the union demonstrating its intent to represent the employees of the non-union employer. By contrast, in this case the evidence of the Union's intent to represent PAC's employees appears directly in its letter to Witty notifying him of the $16,000 fine and that the fine would be reduced if Witty would enter a labor agreement on behalf of PAC. This evidence fully supports the ALJ's decision that the Union engaged in an unfair labor practice under Section 8(b)(1)(B).

The Union also claims that the Board erred by affirming the ALJ's refusal to hear evidence on the Union's defense theory that PAC was an alter ego of CEC. An alter ego situation arises when an employer creates an entity through which it channels its operations with the purpose of avoiding the obligations of a collective bargaining agreement. *Carpenters Local No. 1846 v. Pratt Farnsworth*, 690 F.2d 489, 504 (5th Cir.1982) *cert. denied* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). An alter ego employer will be bound by the terms of a collective bargaining contract entered into by its parent and the union. *NLRB v. Associated General Contractors*, 633 F.2d 766, 771 (9th Cir.1980) *cert. denied* 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981).

The Union asserts that, if the evidence had been allowed, it would have shown that

Witty was an employer, and not entitled to protection from discipline under Section 8(b)(1)(B). When an employer is himself acting as his own representative in negotiations and handling grievances, there can be no danger that his selection of a representative will be affected by any conduct of the union, and union punishment of the employer, if otherwise appropriate, will be upheld. *NLRB v. International Brotherhood of Electrical Workers Local 323*, 703 F.2d 501, 507 (11th Cir.) *cert. denied*, 464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326 (1983), citing *Glaziers and Glassworkers Local 621, International Brotherhood of Painters*, 221 NLRB 509 (1975).

■ The internal union charge filed against Witty did not allege that PAC was the alter ego of CEC; Witty was fined solely because he was working for a non-union employer. A finding that PAC was an alter ego of CEC would not by itself negate the fact that an unfair labor practice has occurred. Only if Witty were an owner of CEC or could otherwise qualify as an employer would the Union's alter ego theory be relevant. The record reflects that Witty never had an ownership interest in PAC, for he neither owned any portion of the company nor shared in its profits. Similarly, the record does not reflect any facts that would warrant classifying Witty as an employer, under an alter ego theory or otherwise. The ALJ was therefore correct in determining that:

> ... the *alter ego* theory would not establish an affirmative defense in these circumstances where PAC itself is an employer and Witty possesses authority for the purposes of collective bargaining and the adjustment of grievances on behalf of PAC.

■ The Union failed to make an offer of proof regarding the excluded alter ego evidence and now attempts to excuse its failure to do so by claiming that the ALJ made such a broad ruling that an offer of proof was rendered unnecessary. However, questioning was allowed on such subjects as Witty's employment by CEC, Sabey's ownership of the company, and the lack of Witty's financial interest, other than as a salaried employee, in PAC. The Union never sought to ask questions relating to any financial interest on the part of Witty in CEC. The ALJ invited an offer of proof on the alter ego issue, allowed questions challenging Witty's credibility, and stated that he would not rule in advance that any specific question was improper.

As the NLRB commented in its adoption of the ALJ's decision:

> The [Union] ... never sought to lay [the] foundation for the excluded evidence at trial. Having failed to make an offer of proof that Witty held a financial interest in CEC, the [Union] cannot now claim prejudicial error if it is asserting evidence of such an interest exists. We further observe that the [Union] does not on brief claim there is any such evidence, newly discovered or in the record.

■ The Union's final contention is that it was denied its right to effective cross-examination of Witty at the hearing because of constant interruptions from the ALJ and opposing counsel. The Union asserts that the interruptions gave Witty "unwarranted time and information with which to formulate contrived answers." 29 C.F.R. Section 102.35(f) authorizes an ALJ "to regulate the course of the hearing." 29 C.F.R. Section 102.35(1) provides that an ALJ can "request the parties at any time during the hearing to state their respective positions concerning any issue in the case or theory in support thereof." The Union has not been denied a right to effective cross-examination because the ALJ in this case listened to objections from opposing counsel and engaged in discussions regarding those objections.

The NLRB's order finding the Union in violation of Section 8(b)(1)(B) should be enforced. It is so ordered.