NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

UNITED ASSOCIATION OF JOURNEY-
MEN AND APPRENTICES OF the
PLUMBING AND PIPE–FITTING IN-
DUSTRY OF the UNITED STATES
AND CANADA, Respondent.

No. 86–7237.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1987.

Decided Sept. 8, 1987.

Brian A. Powers, Washington, D.C., for petitioner.

Pat Wynns, Washington, D.C., for respondent.

Before ANDERSON, NORRIS and LEAVY, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The National Labor Relations Board (the Board) has applied to this court for enforcement of its order requiring respondent United Association of Journeymen, etc. (the Union) to cease and desist from causing its members to violate the National Labor Relations Act by engaging in an unfair labor practice in the form of a secondary boycott prohibited by section 8(b)(4) of the Act (29 U.S.C. § 158(b)(4)). The Union contends that fining its members who crossed a lawful picket line at a common situs with no reserve gate does not constitute an unlaw-

ful secondary boycott. We affirm the Board's order and grant the application to enforce it.

## BACKGROUND

Athejen Building Construction (Athejen) was a general contractor at a construction site in Union City, California. Athejen subcontracted the plumbing work to T.S. Hanson Plumbing (Hanson) who was a party to a collective bargaining agreement with the Union. After construction began, the United Brotherhood of Carpenters and Joiners of America, Local 1622 (Carpenters), entered into a labor dispute with Athejen and began lawfully picketed the construction site where Hanson was working. However, Athejen did not set up a "reserve gate" for Hanson's employees, i.e., the neutral employees. As a result, Hanson's employees could report to work only by crossing the Carpenters' picket line.

The Union's rules prohibited the crossing of a lawful picket line of a sister union. When two of Hanson's employees, Charles Cox and Walter Huth, crossed the Carpenters' picket line to work, they were each assessed a $1,000 fine by the Union for doing so. The fine was subsequently ratified in accordance with the Union's constitution.

The Board ruled that these fines constituted an unfair labor practice as a secondary boycott under Section 8(b)(4) of the Act and ordered the fines rescinded. The Board reasoned that the fines forced Cox and Huth to stop working for Hanson in order to cause Hanson to cease doing business with Athejen. The Board then appealed to this court under section 10(e) of the Act for enforcement of its order issued against the Union.

## DISCUSSION

An NLRB order will be enforced if the Board's findings are supported by substantial evidence and the Board correctly applied the law. *NLRB v. IBEW Local 46*, 793 F.2d 1026, 1028 (9th Cir.1986). The Board's interpretation of the Act is entitled to deference and this court will uphold it if it is reasonably defensible. *Id. See also NLRB v. Weingarten, Inc.*, 420 U.S. 251, 266–67, 95 S.Ct. 959, 968–69, 43 L.Ed.2d 171 (1975).

■ Section 8(b)(1)(A) of the Act includes a proviso that allows a union to establish internal rules to advance the union's interest in concerted action, including the fining of members who fail to honor a sister union's lawful economic strike. *See NLRB v. Retail Clerks Local 1179*, 526 F.2d 142, 145 (9th Cir.1975) (relying on *Scofield v. NLRB*, 394 U.S. 423, 428–30, 89 S.Ct. 1154, 1157–58, 22 L.Ed.2d 385 (1969), and *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967)). However, if the union rule violates national labor policy, the union's action will be regarded as coercive and violative of section 8(b)(1)(A) as well. *Id.*

The question presented here is whether the Union's rule against the crossing of a lawful picket line of a sister union violates section 8(b)(4) under the circumstances of this case because it constitutes a secondary boycott. We believe it does.

■ Common situs picketing poses special problems in the construction industry. While construction is an integrated endeavor, subcontractors are separate entities entitled to protection from secondary boycotts. *See NLRB v. Denver Bldg. & Constr. Trades Council*, 341 U.S. 675, 689, 71 S.Ct. 943, 951, 95 L.Ed. 1284 (1951).

■ Here, the Union disciplined Cox and Huth for crossing the picket line to work for a neutral employer. No reserve gate was established. These employees were free to cross the picket line to work in exercise of their section 7 rights. The Board found that, "[t]o permit the [Union's] fines here would lead to the anomolous result that a secondary union may attempt to influence employees of a neutral employer by means denied the primary un-

ion itself." We believe the interpretation by the Board is reasonably defensible and must be upheld.

That a reserve gate was not established is not a distinguishing factor. As the Board stated, "The absence of a reserved gate may have the consequence of extending the permissible physical limits of the primary labor dispute on a common situs, but neutral subcontractors on the situs remain neutrals protected by section 8(b)(4) against conduct which has a clear and direct proscribed secondary objective even when there is no reserved gate." Since the Board's interpretation must be granted deference, we will adhere to it. Moreover, on nearly identical facts, we previously held that where a union's discipline had such a secondary objective it constituted a section 8(b)(4) violation. *Sheet Metal Workers Local 252*, 166 N.L.R.B. 262 (1967), *enf'd*, 429 F.2d 1244 (9th Cir.1970). We are bound by that decision.

The Petition for Enforcement is

GRANTED.