**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SILVER BAKERY, INC., OF NEWTON, MASSACHUSETTS, et al., Respondents.**

**No. 6504.**

United States Court of Appeals First Circuit.

Oct. 1, 1965.

Paul J. Spielberg, Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Glen M. Bendixsen, Washington, D. C., were on brief, for petitioner.

Allan A. Tepper, Boston, Mass., with whom Snyder, Tepper, Berlin & Katz, Boston, Mass., was on brief, for Silver Bakery, Inc., of Newton, respondent.

Warren H. Pyle, Boston, Mass., with whom Angoff, Goldman, Manning & Pyle, Boston, Mass., was on brief, for Bakers Union Local No. 45, affiliated with Bakery & Confectionery Workers International Union of America, intervenor.

Before ALDRICH, Chief Judge, J. WARREN MADDEN, Senior Judge,* and JULIAN, District Judge.

ALDRICH, Chief Judge.

 One O'Brien, the charging party, was discharged by respondent employer at the insistence of the respondent union because of a breach of an unwritten union practice calling for early notice to the union of his intention to take a day off. O'Brien violated no provision of the collective bargaining agreement. The Board's finding that the employer did not wish to discharge him, but did so only because the union demanded it, was amply warranted. We may agree with the Board that the union violated section 8(b) (2) and (1) (A) and that the employer's subservience to the union's demand was a violation of section 8(a) (3)

and (1). Radio Officers' Union, etc. v. NLRB, 1954, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455; see Lummus Co. v. NLRB, D.C.Cir., 1964, 339 F.2d 728.

We cannot, however, agree with the Board that the present proceedings were not prosecuted in violation of section 10(b) of the Act. O'Brien was discharged on February 5, 1962. He filed charges on March 8, 1962. A week later, due to what proved to be inadequate investigation, the regional director informed O'Brien that the employer did not meet the Board's jurisdictional standards, and requested that he withdraw the charges without prejudice. This was done, with the Board's consent. The respondents knew of the charges and of the fact that they were withdrawn without prejudice. Conceivably they knew the reason for the withdrawal, but they in no way contributed to the regional director's mistake.

O'Brien filed charges before the Massachusetts State Labor Relations Commission on June 7, 1962. On April 22, 1963 the respondent employer raised the question of the jurisdiction of the commission, and, additional facts then appearing, the commission dismissed on jurisdictional grounds the next day. On June 1, 1963 O'Brien requested the regional director to reopen the cases. So far as appears, notification of this request was not conveyed to the respondents until July 22, 1963 when the regional director notified them that the March 1962 withdrawal was "revoked" and the cases were being "reopened."

Section 10(b) reads in part as follows. "[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *." 29 U.S.C. § 160(b).

On the above facts, the charges were reopened some seven months after the occurrence of the unfair labor practices

---

* By designation.

if we exclude the time that charges were pending before the state commission, but less than six months if we also exclude the time spent by the regional director considering whether to grant O'Brien's request to reopen. Such circumstances might raise the question whether, if section 10(b) is a normal statute of limitations, it was tolled during the two periods in question. The Board's opinion in deciding against the respondents does not proceed, however, on that basis, but states,

> "In our opinion, Section 10(b) relates only to the actual filing of charges. * * * A charge 'sets in motion the machinery of an inquiry.' [Citation omitted.] * * * [T]he General Counsel acting in the public interest to effectuate the policies of the Act has virtually unlimited discretion to proceed on charges as he deems fit in the exercise of his office. * * * [T]here is nothing in the Act limiting his authority to issue a complaint once a charge is filed.

> "As the charge herein was filed within the 6-month limitation the only question before us, therefore, is whether the equities in the case compel a dismissal of the complaint. * * *"

The Board then pointed out that there had been no change of position or detriment suffered by the respondents, and held, accordingly, that the equities were in favor of prosecuting the charge. It did not, however, purport to rely (and the oral argument before us indicated that were we to remand for further inquiry it still could not rely) upon any misrepresentation, misconduct, or even silent bad faith on the part of the respondents which might have created an estoppel.[1]

■■ Section 10(b) is clearly an ordinary statute of limitations. Cf. Local Lodge No. 1424 v. NLRB, 1960, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832. It has been applied, consistently, so far as we

can discover, to bar "reinstated" charges after withdrawal of an original, timely charge. Cf. NLRB v. Electric Furnace Co., 6 Cir., 1964, 327 F.2d 373; Olin Industries, Inc., 1951, 97 N.L.R.B. 130. There was no statutory basis in the Act for holding the statute to be tolled, and no other ground. The Board's broad proposition that once a complaint has been filed and dismissed only so-called equitable principles determine when it can be revived was created out of whole cloth. From the standpoint of respondents, for whom section 10(b) was enacted, we can think of no good reason why the mere filing of a charge which is withdrawn with the consent of the Board, so that no proceedings are pending, should leave in the Board a roving discretion to determine that so-called equities warrant the reinstitution of the proceedings without limit of time. The fact that the Board may feel that its discretion is benignly exercised cannot answer the clear purpose of a statute of limitations. The order may not be enforced.

---

1. Neither respondent was represented by counsel until shortly before the motion to dismiss was made before the state commission, when newly engaged counsel recognized the Board's original oversight.