**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL UNION NO. 272, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, AFL–CIO, Respondent.**

**No. 28001.**

United States Court of Appeals, Fifth Circuit.

June 3, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Harold A. Boire, Director, Region 12, N.L.R.B., Tampa, Fla., Jerome Weinstein, Atty., N.L.R.B., Washington, D. C., for petitioner.

Allan M. Elster, Seymour A. Gopman, Miami Beach, Fla., for respondent.

Before GODBOLD, DYER, and MORGAN, Circuit Judges.

PER CURIAM.

This is an application of the National Labor Relations Board pursuant to § 10 (e) of the National Labor Relations Act, as amended, 61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq. (hereinafter the Act) for enforcement of its order of June 25, 1968, against Local Union No. 272, International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO (hereinafter respondent). The Board had previously awarded (in 152 NLRB 269) certain disputed work to employees represented by the Carpenters' District Council of Miami, Florida and Vicinity, AFL-CIO (hereinafter Carpenters Union). Subsequently, respondent engaged in conduct which the Board found (in 172 NLRB 19) to be in violation of § 8(b) (4) (i) (ii) (D) and (B) of the Act. Specifically, this conduct, as found in part by the Trial Examiner and adopted by the Board and in part by the Board separately, was as follows:

1. At the South Campus of Miami-Dade County Junior College jobsite, the members of respondent walked off their jobs on learning of the assignment of the work of installing precast items to members of the Carpen-

ters Union. Additionally, the respondent's business agent made threats to a neutral contractor on the job who was not a party to the jurisdictional dispute.

2. At the Sunland Training Center jobsite, the members of respondent picketed with signs reading "Prestress (the employer who chose the carpenters to do the pre-cast installation work on these various projects) * * pays substandard wages to employees doing Ironworkers' work. Ironworkers Local 272".

3. At the Triton Towers work project, when the members of the Carpenters Union came to do some pre-cast installation work, many members of respondent left the job on several different occasions, reporting that they were sick.

The Board found that such conduct at all three jobsites violated 8(b) (4) (i) (ii) (D) by inducing and encouraging individuals employed by the contractors on these jobs to engage in work stoppages, and by threatening and coercing employees of two of these contractors with an object of forcing Prestress to assign the disputed work to employees who were members of respondent, rather than to Prestress' employees who were members of the Carpenters Union. The Board further found that respondent had violated 8(b) (4) (i) (ii) (B) by applying its economic pressure to employees and employers not parties to the dispute between Prestress and respondent. The Board ordered respondent to cease and desist from such violations and, affirmatively, to post the appropriate notice and to mail copies of such notice to each of the members of respondent.

■ After a complete review of the record, it appears that the above specified conduct was not instigated by the members of the Carpenters Union "taunting and harassing" members of respondent, as respondent claims. The record clearly shows a pattern of respondent's refusal to accept the Board's award of the disputed jobs to the Carpenters Un-

ion. While there is no direct evidence of respondent's complicity in the walk-offs at the South Campus jobsite, there was a substantial amount of indirect evidence that respondent's officials supported its members in their refusal to accept the Board's award. Since all that is required is that the Board make a realistic analysis of the union's conduct, circumstantial, as well as direct, evidence may be considered. See N. L. R. B. v. International Brotherhood of Boilermakers, etc., Local No. 83, 8 Cir., 1963, 321 F.2d 807.

■ Nor do we find merit to the respondent's claim that, since the immediate objective of the picketing was to raise sub-standard wages of the carpenters doing pre-cast work, the conduct was lawful. The Act states that the conduct is unlawful if "*an* object" of the picketing is to force the reassignment of the disputed work. The Iron Workers Union admits that "the ultimate objective which the Union seeks to achieve in the future is the acquisition of the work for its own members * * *". The record supports the Board's finding that " * * * a more immediate objective * * * was to force * * * an assignment of the pre-cast work to its members". As this court has stated, "the final obligation to determine the facts * * * rests with (the Board) and * * * in all cases where examiner and board differ, if the board's findings are supported by evidence on the record considered as a whole they should be sustained by us". N. L. R. B. v. Akin Products Co., 5 Cir., 1953, 209 F.2d 109, 111. From examination of the entire record, we conclude that the preponderance of the evidence demonstrates that respondent violated both subsections (D) and (B) of 8(b) (4) (i) (ii).

■ Likewise, respondent's procedural objections are without merit. In essence, respondent's first procedural objection is that since the Regional Director approved the withdrawal of unfair labor charges made earlier by Prestress against respondent, this amounts to a

dismissal of the charge, under the language of the Act,[1] and the Regional Director committed error in revoking his approval and reinstating the charges, rather than requiring new charges be filed and a new hearing conducted. Respondent, in support of its contention, cited cases like Olin Industries, Inc., 97 NLRB 130, 132 (1951); N. L. R. B. v. Electric Furnace Co., 327 F.2d 373, 375 (C.A. 6, 1964); N. L. R. B. v. Silver Bakery, Inc., 351 F.2d 37, 39 (C.A. 1, 1965); but its reliance on these decisions is misplaced, for they do not deal with circumstances, as here, where charges were dismissed only after a respondent agreed with the Regional Director to comply with the Section 10 (k) determination and, consequently, abstain from related unfair labor practice conduct in derogation of the award. The instant situation, as the Trial Examiner noted is thus similar "to that where a respondent enters into an informal settlement with a Regional Director in which, in return for the latter's not proceeding to formal litigation, respondent agrees to cease and desist from engaging in certain conduct". In such circumstances, as the Board stated in Courier Post Publishing Co., 102 NLRB 26, 28 (1953):

> [W]here, after the execution of a settlement agreement, unfair labor practices occur which violate that agreement, the Board will go behind the agreement and litigate the presettlement as well as the post-settlement violations [citation omitted], for the reason that it is a "salutary policy to protect parties to a settlement agreement against violations of the agreement". [citation omitted] Where alleged postsettlement violations are brought to its attention, the Board

is not precluded by Section 10(b) of the Act from processing the unfair labor practices alleged in the presettlement charge notwithstanding such violations occurred more than 6 months before the filing of the postsettlement charge [citation omitted].

Furthermore, as the Trial Examiner pointed out, "to accept respondent's contention could lead to an entirely absurd and incongruous result"; for respondent "could on one day agree to comply with a [Section] 10(k) determination resulting in a dismissal of charges and then the next day go out and engage in the same conduct," thus necessitating "the filing of a new charge, a new 10(k) hearing, and a new 8(b) (4) (D) proceeding, on a continuous merry-go-round".

The respondent's final contention is that the Board abused its discretion in denying Prestress' Motion for Reconsideration. Inasmuch as the motion was filed after the General Counsel had filed his appeal to this court, the Board properly refused jurisdiction. 29 U.S.C. § 160(e). Furthermore, the Board has wide discretion (see, e. g., N. L. R. B. v. United Packinghouse Workers of America, 5 Cir., 1960, 274 F.2d 816) and where, as here, there is strong likelihood that the jurisdictional dispute could continue, that discretion is not abused. Under these circumstances, the Board's affirmative command to require notices be posted and mailed to members of respondent is remedial, not punitive, and is appropriate even if subsequent conduct may show compliance with the Board's award. See N. L. R. B. v. Mexia Textile Mills, 339 U.S. 563, 70 S.Ct. 833, 94 L.Ed. 1067 (1950).

The order of the Board is enforced.

---

1. Section 10(k) of the Act states:

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of Section 8(b), the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.