UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT


No. 95-1618

CHRISTINE KELLEY,

Petitioner, Appellant,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent, Appellee.



ON PETITION FOR REVIEW OF AN ORDER OF
THE NATIONAL LABOR RELATIONS BOARD



Before

Selya, Circuit Judge, 
Bownes, Senior Circuit Judge, 
and Stahl, Circuit Judge. 



Margaret J. Palladino, with whom Tamara E. Goulston, and 
Sherburne, Powers & Needham, P.C., were on brief for petitioner, 
appellant.
Christopher W. Young, Attorney, with whom Frederick L. Feinstein, 
General Counsel, Frederick C. Havard, Supervisory Attorney, Linda 
Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy 
Associate General Counsel, National Labor Relations Board, were on
brief for respondent, appellee.
Jay M. Presser, Audrey J. Samit, and Skoler, Abbott & Presser, 
P.C., on brief for intervenor, appellee Dun & Bradstreet Software 
Services, Inc. 



March 26, 1996


BOWNES, Senior Circuit Judge. This appeal concerns BOWNES, Senior Circuit Judge. 

the requirements for filing unfair labor practice charges

with the National Labor Relations Board ("Board").

Plaintiff-appellant Christine Kelley ("Kelley") seeks review

of a Board order dismissing her unfair labor practice

complaint against intervenor-appellee Dun & Bradstreet

Software ("DBS"), her former employer. The Board dismissed

Kelley's complaint for failure to serve a copy of the charge

underlying the complaint within the six-month time period

prescribed by section 10(b) of the National Labor Relations

Act ("Act"), 29 U.S.C. 160(b). We affirm the Board's

decision. Jurisdiction stems from 29 U.S.C. 160(f).

I. I.

BACKGROUND BACKGROUND 

DBS, a company which develops and markets computer

software, employed Kelley at its Framingham, Massachusetts,

facility until April 1993. On April 12, 1993, Kelley was

terminated from her sales representative position. Shortly

after her termination, Kelley retained counsel to represent

her in an unlawful termination suit against DBS. Kelley, by

her counsel, sent an August 30, 1993, letter to DBS alleging,

inter alia, that it terminated her because she engaged in 

concerted activities with other employees to dissuade DBS

from changing its food service provider. The letter demanded

a $120,000.00 settlement, stating that the settlement offer

-2- 2

would be withdrawn if DBS failed to respond by September 17,

1993. It also notified DBS of Kelly's intent to pursue legal

remedies in the event of failed negotiations. 

After postponing, at DBS's request, the date by

which a response to the settlement offer was due, Kelley's

attorney contacted DBS regarding the initiation of legal

proceedings against it. On September 27, 1993, Kelley's

attorney informed DBS that she would commence legal

proceedings to ensure that Kelley complied with the six-month

statute of limitations prescribed by section 10(b) of the

Act. On October 1, 1993, Kelley's attorney discussed the

procedures for filing unfair labor practice charges with the

Board information officer for Region 1 and specifically asked

whether her client was responsible for serving DBS with a

copy of the charge filed against it. The information officer

informed her that the regional office would mail the charge

to DBS. 

On October 6, 1993, Kelley filed an unfair labor

practice charge with the Board's regional office, contending

that DBS terminated her in violation of section 8(a)(1) of

the Act, 29 U.S.C. 158(a)(1), which makes it an unfair

labor practice for employers to "interfere with, restrain, or

coerce employees in the exercise of the rights guaranteed by

[the Act]." 29 U.S.C. 158(a)(1). Neither Kelley nor her

attorney served or attempted to serve DBS with a copy of the

-3- 3

charge. And due to personnel changes in the regional office,

the Board did not mail DBS a copy of the charge until October

13, 1993, one day after the six-month statute of limitations

prescribed by the Act elapsed. An amended charge, which

appellant filed on July 7, 1994, was served on DBS July 8,

1994. See Truck Drivers & Helpers Union v. NLRB, 993 F.2d 

990, 1000 n.12 (1st Cir. 1993)("A complaint based on a timely

filed charge may be amended to include other allegations . .

. .").

Despite the untimely service of the initial charge,

the Board's General Counsel issued a complaint against DBS on

July 20, 1994. See id. The complaint, which was accompanied 

by notice of a November 7, 1994, hearing on the claims

brought against DBS, alleged that Kelley's termination

violated section 8(a)(1) of the Act. Pursuant to the

Board's complaint, DBS filed an answer admitting in part, and

denying in part, the complaint allegations and raising the

affirmative defense that Kelley's action was time-barred. On

October 5, 1994, DBS filed a joint Motion to Dismiss and a

Motion for Summary Judgment with the Board, maintaining that

Kelley's complaint should be dismissed because the underlying

charge, though timely filed, was served one day after the

six-month limitations period established by statute. On

October 17, 1994, both the General Counsel and Kelley filed

briefs opposing DBS's motion, contending that the demand

-4- 4

letter sent to DBS provided actual notice of the charge and

that section 10(b) should be equitably tolled because of

DBS's delay in responding to the settlement demand and

Kelley's reliance on the information officer's statement of

Board procedure. DBS filed a reply brief on October 21,

1994. 

On October 31, 1994, the Board issued an order

transferring the proceeding to the Board and a Notice to Show

Cause why DBS's motion should not be granted. On April 27,

1995, a three-member panel of the Board concluded that

Kelley's complaint should be dismissed for failure to serve a

copy of the charge within the six-month period section 10(b)

prescribes. Emphasizing the statutory policy against holding

respondents liable for conduct occurring more than six months

earlier, the Board found that there are "no special

circumstances present in this case that would warrant a

conclusion that the statutory service requirement was

satisfied." It noted that neither Kelley nor the General

Counsel alleged that DBS attempted to evade service or

fraudulently conceal the operative facts underlying the

alleged violation. See Kale v. Combined Ins. Co. of Am., 861 

F.2d 746, 752 (1st Cir. 1988). It also noted that both

section 10(b) and section 102.14 of the Board's Rules and

Regulations, 29 C.F.R. 102.14, place primary responsibility

for effectuating timely service on the charging party,

-5- 5

rejecting claims that the statute should be tolled because

Kelley detrimentally relied on the Board employee's statement

of procedure. 

II. II.

DISCUSSION DISCUSSION 

We are faced with two issues on appeal. The first

involves section 10(b)'s charge-content requirements and asks

us to consider whether a demand letter mailed to a party

within the statute of limitations period provides actual

notice within the meaning of the Act. The second issue

concerns the circumstances under which equitable principles

may appropriately be employed to toll section 10(b)'s

limitations period. Appellant argues that the August 30,

1993, settlement letter sent to DBS provided actual notice

within the meaning of the Act and, in the alternative, that

her reliance on the Board employee's information and DBS's

delay in responding to her settlement offer warrant tolling

of the statute. 

Both the Board and DBS, as intervenor, contend that

the Board correctly dismissed Kelley's claim as time-barred.

They assert that Kelley did not effectuate constructive

service within the meaning of the Act and maintain that

neither DBS's conduct nor the misinformation provided by the

Board employee and detrimentally relied upon by Kelley

-6- 6

warrant tolling of the statute. It is well-established that,

absent special circumstances, unfair labor practice charges

must be both filed and served within six months after the

date of the alleged statutory violation. See NLRB v. Local 

264, Laborers' Int'l Union of N. Am., 529 F.2d 778, 783 (8th 

Cir. 1976); see also NLRB v. Warrensburg Bd. & Paper Corp., 

340 F.2d 920, 925 (2d Cir. 1965)("Only proof of extraordinary

circumstances will cause the reviewing court to find that

strict compliance with the Board's regulations was not

required."). 

Standard of Review Standard of Review 

When reviewing unfair labor practice orders, we

review the Board's interpretation of the Act and its

requirements for a "'reasonably defensible construction'" and

review the Board's application of its rules "'for rationality

and consistency with the Act.'" NLRB v. Manitowoc Eng'g Co., 

909 F.2d 963, 971 n.10 (7th Cir. 1990)(citing cases), cert. 

denied sub nom. Clipper City Lodge No. 516 v. NLRB, 498 U.S. 

1083 (1991); see also Truck Drivers, 993 F.2d at 995. While 

"we will not 'rubber stamp'" Board decisions, NLRB v. Int'l 

Bhd. of Elec. Workers, Local 952, 758 F.2d 436, 439 (9th Cir. 

1985), we "must enforce the Board's order if the Board

correctly applied the law and if the Board's findings of fact

are supported by substantial evidence on the record as a

whole." Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 22 (1st 

-7- 7

Cir.), cert. denied, 464 U.S. 892 (1983)(citing cases); Union 

Builders, Inc. v. NLRB, 68 F.3d 520, 522 (1st Cir. 1995); see 

also 29 U.S.C. 160(f)("[T]he findings of the Board with 

respect to questions of fact if supported by substantial

evidence on the record considered as a whole shall in like

manner be conclusive."). Absent a finding that the Board's

application of section 102.14 was "so arbitrary as to defeat

justice," we are obligated, by the deference traditionally

accorded the Board and its rules and regulations, not to

disturb the Board's decision. Father & Sons Lumber & Bldg. 

Supplies v. NLRB, 931 F.2d 1093, 1096 (6th Cir. 1991); see 

NLRB v. United Food & Commercial Workers Union, Local 23, 484 

U.S. 112, 123 (1987); Strickland v. Maine Dep't of Health and 

Human Services, 48 F.3d 12, 17 (1st Cir.), cert. denied, 116 

S. Ct. 145 (1995). 

Enactment and Administration of Section 10(b) Enactment and Administration of Section 10(b) 

Section 10(b) operates as an ordinary statute of

limitations, subject to recognized equitable doctrines, and

not as a jurisdictional restriction. Zipes v. Trans World 

Airlines, Inc., 455 U.S. 385, 395 n.11 (1982)(citing cases); 

see NLRB v. Crafts Precision Indus., Inc., 16 F.3d 24, 26 

(1st Cir. 1994); NLRB v. Silver Bakery, Inc. of Newton, 

Massachusetts, 351 F.2d 37, 39 (1st Cir. 1965). First 

enacted as part of the Wagner Act, Act of July 5, 1935, ch.

372, 49 Stat. 449 (1935), without a specific time limit for

-8- 8

filing and serving charges, the section 10(b) proviso was

amended to include a six-month statute of limitations in

1947. Laborer's Int'l Union, 529 F.2d at 781-85; see Taft- 

Hartley Act Amendments, Act of June 23, 1947, ch. 120, 61

Stat. 136. In pertinent part, section 10(b) provides:

Whenever it is charged that any person
has engaged in or is engaging in any such
unfair labor practice, the Board, or any
agent or agency designated by the Board
for such purposes, shall have power to
issue and cause to be served upon such
person a complaint stating the charges in
that respect, and containing a notice of
hearing before the Board or a member
thereof, or before a designated agent or
agency, at a place therein fixed, not
less than five days after the serving of
said complaint: Provided, That no 
complaint shall issue based upon any
unfair labor practice occurring more than
six months prior to the filing of the
charge with the Board and the service of
a copy thereof upon the person against
whom such charge is made 
. . . .

29 U.S.C. 160(b). Congress added the time limitation to

discourage dilatory filing of unfair labor practice charges

and to "bar litigation over past events 'after records have

been destroyed, witnesses have gone elsewhere, and

recollections of the events in question have become dim and

confused . . . .'" Local 1424, Int'l Ass'n of Machinists v. 

NLRB, 362 U.S. 411, 419 (1960)(quoting H.R. Rep. No. 245, 

80th Cong., 1st Sess. 40); see Silver Bakery, Inc., 351 F.2d 

at 39. Under current law, the section 10(b) period begins to

run when the "aggrieved individual has actual notice that an

-9- 9

unfair labor practice has been committed." Esmarck, Inc. v. 

NLRB, 887 F.2d 739, 745 (7th Cir. 1989). An adverse 

employment decision provides such notice. Id. at 745-46.  

Congress entrusted the Board with broad discretion

for interpreting the Act and adjudicating unfair labor

practice claims. See generally Commercial Workers Union, 484 

U.S. at 118-22; NLRB v. Rutter-Rex Mfg. Co., 396 U.S. 258, 

262-63 (1969). To effectuate the purposes of the section

10(b) proviso, the Board has promulgated a series of rules

and regulations. See 29 C.F.R. ch. I, pt. 102 (7-1-95 

Edition); see also 29 U.S.C. 156 ("The Board shall have 

authority . . . to make, amend, and rescind . . . such rules

and regulations as may be necessary . . . ."). Chief among

these is section 102.14, which provides: 

Upon filing of a charge, the charging
party shall be responsible for the timely
and proper service of a copy thereof upon
the person against whom such charge is
made. The regional director will, as a
matter of course, cause a copy of such
charge to be served upon the person
against whom the charge is made, but he
shall not be deemed to assume
responsibility for such service.

29 C.F.R. 102.14 (1995); see also 29 C.F.R. 101.4 

(1995)(investigation of charges)("[T]imely service of a copy

of the charge . . . is the exclusive responsibility of the

charging party and not of the Regional Director."). Under

section 102.14, charging parties such as appellant bear

-10- 10

primary responsibility for service of unfair labor practice

charges. While standard Board operating procedure dictates

that regional offices serve charged parties with a copy of

the charge filed against them, charging parties such as

Kelley must ultimately ensure timely service. Charges are

timely if mailed or personally served within the limitations

period. See 29 C.F.R. 102.113(a); see also West v. 

Conrail, 481 U.S. 35, 38 n.3 (1987).  

In light of the 1947 amendments made to section

10(b) and Congress's intent to place practical time limits on

the investigation and prosecution of unfair labor practices,

Laborer's Int'l Union, 529 F.2d at 782-83, we hold that 

section 102.14 is both a rational and reasonable exercise of

the Board's discretion and rulemaking authority. Section

102.14 comports with the congressional policy against

subjecting charged parties to suits brought more than six

months after the occurrence of an alleged unfair labor

practice. We do not think it unreasonable, given this and

the Board's rather liberal construction of the section 10(b)

proviso, to place the ultimate responsibility for timely

service on the shoulders of the party who sets the Board's

adjudicatory procedures in motion. See NLRB v. Wiltse, 188 

F.2d 917, 926 (6th Cir.), cert. denied sub nom. Ann Arbor 

Press v. NLRB, 342 U.S. 859 (1951). 

-11- 11

Because we find that section 102.14 is a reasonable

exercise of the Board's authority, appellant's request for

relief may only be granted if appellant complied with the

statute by providing constructive service of her charge

within the section 10(b) period or the circumstances of this

case are such that an application of equitable principles is

warranted. We now consider whether, on the facts of this

case, either ground for tolling the statute exists. 

Actual Notice and Section 10(b)'s Service Requirement Actual Notice and Section 10(b)'s Service Requirement 

Appellant maintains that she complied with the

spirit, if not the letter, of section 10(b)'s service

requirement and that the Board, therefore, erroneously

dismissed her complaint. More specifically, she asserts that

the August 30, 1993, demand letter provided DBS with actual

notice of the charges against it. Both the Board and DBS

reject this contention. 

The basic proposition that actual notice of a

charge may, in certain circumstances, satisfy section 10(b)'s

requirements is undisputed. See Hospital & Service Employees 

Union v. NLRB, 798 F.2d 1245, 1249 (9th Cir. 1986). Congress 

did not intend unfair labor practice charges to be held to

the same "standards applicable to a pleading in a private

lawsuit." NLRB v. Fant Milling Co., 360 U.S. 301, 307 

(1959). The purpose of a charge is to set the Board's

investigative machinery in motion, not to provide a full

-12- 12

explication of the allegations leveled against a party. Id. 

Charges are generally recorded on a blank form provided by

the Board's regional office, see 29 C.F.R. 101.2 (1995), 

and function primarily as a mechanism for extracting early

and concise statements of the positions held by the charged

and charging parties. See Service Employees Union, 798 F.2d 

at 1249; 29 C.F.R. 101.4. Complaints, on the other hand,

are designed to give notice of the substantive issues

underlying a charge. Service Employees Union, 798 F.2d at 

1249; see 29 C.F.R. 102.15 (1995).  

Nonetheless, we are not at all persuaded that the

August 30, 1993, demand letter satisfies section 10(b)'s

service requirements. First, despite appellant's assertions

to the contrary, it is not settled that charge filing and

service may be accomplished by two different documents

containing similar information. The Board's Statements of

Procedures and Rules and Regulations clearly require service

with a copy of the charge actually filed with the Board.

See, e.g., 29 C.F.R. 101.4, 102.14. Appellant's 

observation that the Board's Statements of Procedures do not

require charges to be filed on a specific form has no bearing

on this. See 29 C.F.R. 101.2. But even if service could 

be accomplished with a charge which differs from the one

filed with the Board, we find that the August 30, 1993,

-13- 13

demand letter lacks the specificity typically required of

charges brought pursuant to the Act. 

The August 30, 1993, letter advances a host of

claims against DBS, which include unfair labor practices,

gender discrimination, and violation of the Federal Equal Pay

Act, 29 U.S.C. 206(d)(1), the Federal Civil Rights Act, 42

U.S.C. 2000e et seq., and the Massachusetts Equal Rights 

Act, Mass. Gen. L. ch. 93, 102, 103. It does not focus on

the section 8(a)(1) violation and, thus, does not comply with

the Board's requirement that charges provide a "clear and

concise statement of the facts constituting the alleged

unfair labor practices affecting commerce." 29 C.F.R. 

102.12 (1995). Moreover, it did not, as the Board correctly

notes, provide notice that a charge was actually filed with

the Board. Because the letter was mailed more than a month

before appellant filed her charge, it only notified DBS of

the possibility that a charge would be filed. Compare Bihler 

v. Singer Co., 710 F.2d 96 (3d Cir. 1983)(letter discussing 

possibility of legal action not an EEOC charge). This, we

think, falls short of what section 10(b) contemplates. 

The Ninth Circuit's decision in Hospital & Service 

Employees Union v. NLRB, 798 F.2d 1245 (9th Cir. 1986), 

provides no leverage for appellant's position. While the

Ninth Circuit did hold that actual notice satisfies section

10(b)'s service requirements, 798 F.2d at 1249, it reached

-14- 14

that conclusion on the basis of a set of facts entirely

different from the one with which we are now presented. The

court disregarded the fact that the charges were never

received by the employer in that case because the complaint

was both issued and served within the six-month limitations

period and there was no claim of prejudice to the employer.

Id. at 1249. In contrast, both the charge and the complaint 

in this case were issued after the section 10(b) period

elapsed. Additionally, the employer in Service Employees 

Union, after hearing from an unofficial source that charges 

had been filed, contacted the Board about the investigation

into its employment practices within the limitations period.

Unlike DBS, which did not formally learn that Board

proceedings had been initiated against it until after the

six-month period prescribed by the Act had run, that employer

received actual notice within the meaning of section 10(b). 

For the reasons just stated, the other cases on

which appellant seeks to rest her argument, Buckeye Mold & 

Die Corp., 299 N.L.R.B. 1053 (1990), and Freightway Corp. and 

Kaplan Enter., Inc., 299 N.L.R.B. 531 (1990), are also 

inapposite. Buckeye, a case decided by the Board, explicitly 

adopts the Ninth Circuit's reasoning in Service Employees 

Union. Buckeye, 299 N.L.R.B. at 1053. Accordingly, it does 

not reach cases in which the charge and complaint are both

filed and served outside of the limitations period. It

-15- 15

stands for the narrow holding that noncompliance with section

10(b)'s requirements for charge filing can be cured by timely

service of a complaint. Id. Appellant's reliance on 

Freightway also falls short of the mark. That case held that 

service of an unsigned copy of a charge within the

limitations period satisfies the statute because section

10(b) neither requires that the original signed charge nor a

signed copy of that charge be mailed to the party against

whom the allegations were made. Freightway, 299 N.L.R.B. at 

531. It does not, however, address whether service and

filing can be accomplished by different original documents or

what the contents of each document should be. 

That Kelley's charge was served only one day after

the section 10(b) deadline makes this a hard case. DBS was

not seriously prejudiced by Kelley's untimely service.

Nevertheless, we are unwilling to stretch existing precedent

to find that DBS had actual notice of the charge filed

against it when appellant has failed to comply with the

requirements for charge content and has not cleared the

hurdle of demonstrating that either her charge or complaint

was filed within the limitations period. The Board's

conclusion that appellant did not comply with section 10(b)'s

service requirements, in spirit or letter, is supported by

the record. See Simon v. Kroger Co., 743 F.2d 1544, 1546 

(11th Cir. 1984), cert. denied, 471 U.S. 1075 (1985)("We find 

-16- 16

that the intent, spirit, and plain language of section 10(b)

require that a complaint be both filed and served within the

six month limitations period.").  

Equitable Estoppel And Tolling Under Section 10(b) Equitable Estoppel And Tolling Under Section 10(b) 

Section 10(b)'s statute of limitations period is

subject to equitable modification. Zipes, 455 U.S. at 395 

n.11. Two alternate, though closely related, doctrines have

been developed to resolve the relatively small number of

cases in which equitable modification is appropriate:

equitable estoppel and equitable tolling. Kale, 861 F.2d at 

752; see also Guidry v. Sheet Metal Worker's Nat'l Pension 

Fund, 493 U.S. 365, 376 (1990)("[C]ourts should be loath to 

announce equitable exceptions to legislative requirements or

prohibitions that are unqualified by statutory text.");

Earnhardt v. Commonwealth of Puerto Rico, 691 F.2d 69, 71 

(1st Cir. 1982)("Courts have taken a uniformly narrow view of

equitable exceptions to . . . limitations periods."). They

are appropriate only to avoid injustice in particular cases.

See Heckler v. Community Health Services, 467 U.S. 51, 59 

(1984); see also Cerbone v. Int'l Ladies Garment Worker's 

Union, 768 F.2d 45, 47-48 (2d Cir. 1985).  

Courts invoke equitable estoppel when a defendant's

conduct causes a plaintiff to delay bringing an action or

pursuing a claim he or she was entitled to initiate by law.

Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 61 (2d Cir. 

-17- 17

1986). In the section 10(b) context, it is most often

applied when a plaintiff's untimely filing is caused by a

defendant's deceptive conduct or by reasonable reliance on

the defendant's misleading representations or information.

See, e.g., Barnard Eng'g Co., Inc., 295 N.L.R.B. 226 (1989); 

see also Kale, 861 F.2d at 752; Lavery v. Marsh, 918 F.2d 

1022, 1028 (1st Cir. 1990). It is not employed unless the

plaintiff relies on his or her adversary's conduct and

changes his or her position for the worse. See Community 

Health Services, 467 U.S. at 59; see also Precious Metal 

Assoc., Inc. v. Commodity Futures Trading Comm'n, 620 F.2d 

900, 908 (1st Cir. 1980)(citing Bergeron v. Mansour, 152 F.2d 

27, 30 (1st Cir. 1945)). 

Equitable tolling, in contrast, encompasses a

broader range of conduct, Kale, 861 F.2d at 752, and is 

"appropriate only when the circumstances that cause a

plaintiff to miss a filing deadline are out of his [or her]

hands." Heideman v. PFL, Inc., 904 F.2d 1262, 1266 (8th Cir. 

1990), cert. denied, 498 U.S. 1026 (1991). Cases in which 

the equitable tolling doctrine is invoked are most often

characterized by some affirmative misconduct by the party

against whom it is employed, such as an employer or an

administrative agency. Id. Courts generally weigh five 

factors in assessing claims for equitable tolling: "(1) lack

of actual notice of the filing requirement; (2) lack of

-18- 18

constructive knowledge of the filing requirement; (3)

diligence in pursuing one's rights; (4) absence of prejudice

to the defendant; and (5) a plaintiff's reasonableness in

remaining ignorant of the notice requirement." Kale, 861 

F.2d at 752-53 (citing cases). 

Appellant asserts that grounds for applying both

the equitable estoppel and equitable tolling doctrines exist

in this case. We find no basis for appellant's contention

that equitable estoppel is appropriate because DBS caused the

delay in the filing of her charge. In fact, the record

makes it apparent that the delay, with respect to DBS's

conduct at least, was caused by appellant's counsel's attempt

to obtain a pre-charge settlement from DBS. We do not, of

course, disparage settlement strategies of the sort employed

by appellant's counsel. Prompt disposition of disputes is

consistent with the purposes of the Act, see Service 

Employees Union, 798 F.2d at 1249, and the interests of our 

legal system as a whole. But, having made the decision to

pursue an early settlement with DBS, appellant, who is

represented on appeal by the same counsel who prepared the

August 30, 1993, demand letter and who represented her before

the Board, cannot reasonably expect us now to cure the

defects in her settlement strategy. Though DBS requested an

extension beyond the September 17, 1993, settlement deadline

initially established by appellant's counsel, there is no

-19- 19

evidence in the record that it engaged in deceptive conduct

or unfairly led appellant to believe that it intended to

settle. Compare Cerbone, 768 F.2d at 48-50 (reliance on 

settlement promise); Kanakis Co., Inc., 293 N.L.R.B. 50 

(1989)(perjured testimony by defendant); see also Dillman, 

784 F.2d at 61. Nothing precluded appellant's counsel from

initiating Board proceedings against DBS; she was free at

every moment relevant to this appeal to suspend settlement

negotiations and to file a charge with the Board. That

appellant's counsel notified DBS, on September 27, 1993, she

was withdrawing the settlement offer and taking steps to file

a charge with the Board highlights this point. 

Appellant's position was not substantially changed

by the ten-day delay in filing worked by DBS's request for an

extension of time. When appellant's attorney withdrew the

settlement offer made to DBS, more than two weeks remained

within the section 10(b) period, enough time for appellant to

both file a charge with the Board and serve a copy on DBS.

Thus, to the extent that this case may involve a delay that

was outside of appellant's control, we find that the record

supports the Board's conclusion that it was not caused by

DBS.

The contention that equitable tolling should be

invoked against the Board, however, presents a different

question. It is axiomatic that "the grounds for tolling

-20- 20

statutes of limitations are more limited in suits against the

government . . . ." Swietlik v. United States, 779 F.2d 

1306, 1311 (7th Cir. 1985); see generally Falcone v. Pierce, 

864 F.2d 226, 228-29 (1st Cir. 1988). The main thrust of

appellant's equitable tolling argument is that the blame for

the untimely service of her charge lies with the Board and

the employee who failed to inform her attorney that section

102.14 places the ultimate responsibility for charge service

on the charging party. She alleges, in fact, that the Board

employee specifically instructed her attorney not to serve

DBS with a copy of the charge. 

Although we agree that the Board employee's

statement of Board procedure was incomplete and perhaps

misleading, we do not agree that the delay at issue in this

case can be wholly attributed to an error on the part of the

Board. The record shows that the Board employee neglected to

call appellant's attention to section 102.14, but does not

support appellant's contention that her counsel was

explicitly prohibited from serving DBS with the charge.

Thus, to the extent that the Board did commit an error in

this case, it did not rise to the level of agency error which

has required the application of equitable tolling in other

cases. Compare Page v. U.S. Indus., 556 F.2d 346 (5th Cir. 

1977)(EEOC erroneously sent misleading letter), cert. denied, 

434 U.S. 1045 (1978); Bracey v. Helene Curtis, 780 F. Supp. 

-21- 21

568 (N.D. Ill. 1982)(EEOC miscalculation of filing date);

Roberts v. Arizona Bd. of Regents, 661 F.2d 796 (9th Cir. 

1981)(EEOC affirmatively misconstrued own regulations). 

The emphasis placed on the allegations of agency

error obscures the fact that appellant fails to meet all but

one of the equitable tolling requisites. Although appellant

did not receive actual notice of section 102.14, we find that

she did have constructive notice of it and its requirements

because she was represented by counsel at the time of the

delayed service to DBS. Courts generally impute constructive

knowledge of filing and service requirements to plaintiffs

who, like appellant, consult with an attorney. See Jacobson 

v. Pitman-Moore, Inc., 573 F. Supp. 565, 569 (D. Minn. 1983); 

see also Lopez v. Citibank, N.A., 808 F.2d 905, 907 (1st Cir. 

1987); Edwards v. Kiser Aluminum & Chem. Sales, Inc., 515 

F.2d 1195, 1200 n.8 (5th Cir. 1975); Leite v. Kennecott 

Copper Corp., 558 F. Supp. 1170, 1174 (D. Mass.), aff'd 720 

F.2d 658 (1st Cir. 1983). Appellant's attorney had full

access to the Board's rules and regulations and could have

initiated service on DBS within the section 10(b) period.

That she was unfamiliar with Board regulations, in and of

itself, is not an excuse for failure to comply with section

10(b)'s requirements. NLRB v. Washington Star Co., 732 F.2d 

974, 975 (D.C. Cir. 1984). The general rule is that "those

who deal with the Government are expected to know the law and

-22- 22

may not rely on the conduct of Government agents contrary to

law." Community Health Services, 467 U.S. at 63; see also 

Falcone, 864 F.2d at 230; Kale, 861 F.2d at 754.  

Our holding that appellant had constructive

knowledge of the Board's rules and regulations is further

supported by the duration of the representation she enjoyed.

Jacobson, 573 F. Supp. at 570 ("[T]he duration of the 

attorney-client relationship . . . is the key factor in

determining whether equitable tolling should apply."). The

record reveals that appellant received extensive

representation over an extended period of time. Appellant's

attorney wrote and mailed the August 30, 1993, demand letter

to DBS, contacted the Board about its procedures, filed the

charge with the Board, and then later represented appellant

during Board proceedings. We are not persuaded by

appellant's attempt to characterize the assistance she

received as "limited." This is not a case in which a mere

technicality prevents a layperson from successfully

navigating a complicated regulatory process. Compare Vanity 

Fair Mills, Inc., 256 N.L.R.B. 1104 (1981); Abbott v. Moore 

Business Forms, Inc., 439 F. Supp. 643 (D.N.H. 1977); see 

also Love v. Pullman, 404 U.S. 522, 525-27 (1972). Nor are 

we persuaded by the argument appellant makes with regard to

the two remaining equitable tolling factors. While we take

note of the fact that attorneys frequently contact

-23- 23

administrative agencies about their rules and regulations

directly, we cannot agree that appellant's attorney's

reliance on the information provided by the Board was

reasonable. We think it plain that an attorney's reliance on

oral information, provided over the telephone and by a low-

level employee, is not reasonable. See Community Health 

Services, 467 U.S. at 65; Falcone, 864 F.2d at 230-31. Such 

information, almost by definition, is not nearly as reliable

as simply looking up the text of a regulation. Community 

Health Services, 467 U.S. at 65. We also think it plain that 

appellant failed to exhaust the options for compliance with

the

-24- 24

section 10(b) proviso. Neither appellant nor her attorney

made any attempt to mail or personally deliver a copy of the

charge to DBS. In fact, they failed even to contact the

Board about the status of the charge after it was filed on

October 6, 1993. Had they done so, they might have been

alerted to the problem with the charge and might have avoided

the section 10(b) violation.

That no real prejudice flowed to DBS as a result of

the untimely filing lends some appeal to appellant's

argument. The effect of the Board's order dismissing

appellant's complaint is that the merits of her unfair labor

practice claim against DBS will never be decided. We

appreciate the difficulty this poses for appellant, but are

mindful of the Court's holding in Baldwin County Welcome 

Center v. Brown, 466 U.S. 147 (1984), that the absence of 

prejudice "is not an independent basis for invoking the

[equitable tolling] doctrine and sanctioning deviations from

established procedures." Id. at 152. We hold, therefore, 

that the Board properly refused to invoke equitable estoppel

and tolling in this case.  

III. III.

CONCLUSION CONCLUSION 

For the reasons stated above, the order dismissing

appellant's complaint for untimely service of the charge is

affirmed. Because there are no outstanding issues of 

-25- 25

material fact, the Board properly granted DBS's joint Motion

to Dismiss and Motion for Summary Judgment.

No costs to either party. No costs to either party 

-26- 26