USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1618 CHRISTINE KELLEY, Petitioner, Appellant, v. NATIONAL LABOR RELATIONS BOARD, Respondent, Appellee. ____________________ ON PETITION FOR REVIEW OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Margaret J. Palladino, with whom Tamara E. Goulston, and _______________________ ____________________ Sherburne, Powers & Needham, P.C., were on brief for petitioner, ____________________________________ appellant. Christopher W. Young, Attorney, with whom Frederick L. Feinstein, ____________________ _______________________ General Counsel, Frederick C. Havard, Supervisory Attorney, Linda ____________________ _____ Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy ____ ____________________ Associate General Counsel, National Labor Relations Board, were on brief for respondent, appellee. Jay M. Presser, Audrey J. Samit, and Skoler, Abbott & Presser, _______________ _________________ __________________________ P.C., on brief for intervenor, appellee Dun & Bradstreet Software ____ Services, Inc.  ____________________ March 26, 1996 ____________________ BOWNES, Senior Circuit Judge. This appeal concerns BOWNES, Senior Circuit Judge. ____________________ the requirements for filing unfair labor practice charges with the National Labor Relations Board ("Board"). Plaintiff-appellant Christine Kelley ("Kelley") seeks review of a Board order dismissing her unfair labor practice complaint against intervenor-appellee Dun & Bradstreet Software ("DBS"), her former employer. The Board dismissed Kelley's complaint for failure to serve a copy of the charge underlying the complaint within the six-month time period prescribed by section 10(b) of the National Labor Relations Act ("Act"), 29 U.S.C. 160(b). We affirm the Board's decision. Jurisdiction stems from 29 U.S.C. 160(f). I. I. BACKGROUND BACKGROUND __________ DBS, a company which develops and markets computer software, employed Kelley at its Framingham, Massachusetts, facility until April 1993. On April 12, 1993, Kelley was terminated from her sales representative position. Shortly after her termination, Kelley retained counsel to represent her in an unlawful termination suit against DBS. Kelley, by her counsel, sent an August 30, 1993, letter to DBS alleging, inter alia, that it terminated her because she engaged in _____ ____ concerted activities with other employees to dissuade DBS from changing its food service provider. The letter demanded a $120,000.00 settlement, stating that the settlement offer -2- 2 would be withdrawn if DBS failed to respond by September 17, 1993. It also notified DBS of Kelly's intent to pursue legal remedies in the event of failed negotiations.  After postponing, at DBS's request, the date by which a response to the settlement offer was due, Kelley's attorney contacted DBS regarding the initiation of legal proceedings against it. On September 27, 1993, Kelley's attorney informed DBS that she would commence legal proceedings to ensure that Kelley complied with the six-month statute of limitations prescribed by section 10(b) of the Act. On October 1, 1993, Kelley's attorney discussed the procedures for filing unfair labor practice charges with the Board information officer for Region 1 and specifically asked whether her client was responsible for serving DBS with a copy of the charge filed against it. The information officer informed her that the regional office would mail the charge to DBS.  On October 6, 1993, Kelley filed an unfair labor practice charge with the Board's regional office, contending that DBS terminated her in violation of section 8(a)(1) of the Act, 29 U.S.C. 158(a)(1), which makes it an unfair labor practice for employers to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed by [the Act]." 29 U.S.C. 158(a)(1). Neither Kelley nor her attorney served or attempted to serve DBS with a copy of the -3- 3 charge. And due to personnel changes in the regional office, the Board did not mail DBS a copy of the charge until October 13, 1993, one day after the six-month statute of limitations prescribed by the Act elapsed. An amended charge, which appellant filed on July 7, 1994, was served on DBS July 8, 1994. See Truck Drivers & Helpers Union v. NLRB, 993 F.2d ___ ______________________________________ 990, 1000 n.12 (1st Cir. 1993)("A complaint based on a timely filed charge may be amended to include other allegations . . . ."). Despite the untimely service of the initial charge, the Board's General Counsel issued a complaint against DBS on July 20, 1994. See id. The complaint, which was accompanied ___ ___ by notice of a November 7, 1994, hearing on the claims brought against DBS, alleged that Kelley's termination violated section 8(a)(1) of the Act. Pursuant to the Board's complaint, DBS filed an answer admitting in part, and denying in part, the complaint allegations and raising the affirmative defense that Kelley's action was time-barred. On October 5, 1994, DBS filed a joint Motion to Dismiss and a Motion for Summary Judgment with the Board, maintaining that Kelley's complaint should be dismissed because the underlying charge, though timely filed, was served one day after the six-month limitations period established by statute. On October 17, 1994, both the General Counsel and Kelley filed briefs opposing DBS's motion, contending that the demand -4- 4 letter sent to DBS provided actual notice of the charge and that section 10(b) should be equitably tolled because of DBS's delay in responding to the settlement demand and Kelley's reliance on the information officer's statement of Board procedure. DBS filed a reply brief on October 21, 1994.  On October 31, 1994, the Board issued an order transferring the proceeding to the Board and a Notice to Show Cause why DBS's motion should not be granted. On April 27, 1995, a three-member panel of the Board concluded that Kelley's complaint should be dismissed for failure to serve a copy of the charge within the six-month period section 10(b) prescribes. Emphasizing the statutory policy against holding respondents liable for conduct occurring more than six months earlier, the Board found that there are "no special circumstances present in this case that would warrant a conclusion that the statutory service requirement was satisfied." It noted that neither Kelley nor the General Counsel alleged that DBS attempted to evade service or fraudulently conceal the operative facts underlying the alleged violation. See Kale v. Combined Ins. Co. of Am., 861 ___ ________________________________ F.2d 746, 752 (1st Cir. 1988). It also noted that both section 10(b) and section 102.14 of the Board's Rules and Regulations, 29 C.F.R. 102.14, place primary responsibility for effectuating timely service on the charging party, -5- 5 rejecting claims that the statute should be tolled because Kelley detrimentally relied on the Board employee's statement of procedure.  II. II. DISCUSSION DISCUSSION __________ We are faced with two issues on appeal. The first involves section 10(b)'s charge-content requirements and asks us to consider whether a demand letter mailed to a party within the statute of limitations period provides actual notice within the meaning of the Act. The second issue concerns the circumstances under which equitable principles may appropriately be employed to toll section 10(b)'s limitations period. Appellant argues that the August 30, 1993, settlement letter sent to DBS provided actual notice within the meaning of the Act and, in the alternative, that her reliance on the Board employee's information and DBS's delay in responding to her settlement offer warrant tolling of the statute.  Both the Board and DBS, as intervenor, contend that the Board correctly dismissed Kelley's claim as time-barred. They assert that Kelley did not effectuate constructive service within the meaning of the Act and maintain that neither DBS's conduct nor the misinformation provided by the Board employee and detrimentally relied upon by Kelley -6- 6 warrant tolling of the statute. It is well-established that, absent special circumstances, unfair labor practice charges must be both filed and served within six months after the date of the alleged statutory violation. See NLRB v. Local ___ ______________ 264, Laborers' Int'l Union of N. Am., 529 F.2d 778, 783 (8th _____________________________________ Cir. 1976); see also NLRB v. Warrensburg Bd. & Paper Corp., ___ ____ ______________________________________ 340 F.2d 920, 925 (2d Cir. 1965)("Only proof of extraordinary circumstances will cause the reviewing court to find that strict compliance with the Board's regulations was not required.").  Standard of Review Standard of Review __________________ When reviewing unfair labor practice orders, we review the Board's interpretation of the Act and its requirements for a "'reasonably defensible construction'" and review the Board's application of its rules "'for rationality and consistency with the Act.'" NLRB v. Manitowoc Eng'g Co., ___________________________ 909 F.2d 963, 971 n.10 (7th Cir. 1990)(citing cases), cert. _____ denied sub nom. Clipper City Lodge No. 516 v. NLRB, 498 U.S. ______ ___ ___ __________________________________ 1083 (1991); see also Truck Drivers, 993 F.2d at 995. While ___ ____ _____________ "we will not 'rubber stamp'" Board decisions, NLRB v. Int'l ______________ Bhd. of Elec. Workers, Local 952, 758 F.2d 436, 439 (9th Cir. ________________________________ 1985), we "must enforce the Board's order if the Board correctly applied the law and if the Board's findings of fact are supported by substantial evidence on the record as a whole." Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 22 (1st ______________________________ -7- 7 Cir.), cert. denied, 464 U.S. 892 (1983)(citing cases); Union _____ ______ _____ Builders, Inc. v. NLRB, 68 F.3d 520, 522 (1st Cir. 1995); see ______________________ ___ also 29 U.S.C. 160(f)("[T]he findings of the Board with ____ respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive."). Absent a finding that the Board's application of section 102.14 was "so arbitrary as to defeat justice," we are obligated, by the deference traditionally accorded the Board and its rules and regulations, not to disturb the Board's decision. Father & Sons Lumber & Bldg. _____________________________ Supplies v. NLRB, 931 F.2d 1093, 1096 (6th Cir. 1991); see _________________ ___ NLRB v. United Food & Commercial Workers Union, Local 23, 484 ________________________________________________________ U.S. 112, 123 (1987); Strickland v. Maine Dep't of Health and _______________________________________ Human Services, 48 F.3d 12, 17 (1st Cir.), cert. denied, 116 _______________ _____ ______ S. Ct. 145 (1995).  Enactment and Administration of Section 10(b) Enactment and Administration of Section 10(b) _____________________________________________ Section 10(b) operates as an ordinary statute of limitations, subject to recognized equitable doctrines, and not as a jurisdictional restriction. Zipes v. Trans World _____________________ Airlines, Inc., 455 U.S. 385, 395 n.11 (1982)(citing cases); ______________ see NLRB v. Crafts Precision Indus., Inc., 16 F.3d 24, 26 ___ _______________________________________ (1st Cir. 1994); NLRB v. Silver Bakery, Inc. of Newton, __________________________________________ Massachusetts, 351 F.2d 37, 39 (1st Cir. 1965). First _____________ enacted as part of the Wagner Act, Act of July 5, 1935, ch. 372, 49 Stat. 449 (1935), without a specific time limit for -8- 8 filing and serving charges, the section 10(b) proviso was amended to include a six-month statute of limitations in 1947. Laborer's Int'l Union, 529 F.2d at 781-85; see Taft- ______________________ ___ Hartley Act Amendments, Act of June 23, 1947, ch. 120, 61 Stat. 136. In pertinent part, section 10(b) provides: Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: Provided, That no ________ complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made  . . . . 29 U.S.C. 160(b). Congress added the time limitation to discourage dilatory filing of unfair labor practice charges and to "bar litigation over past events 'after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused . . . .'" Local 1424, Int'l Ass'n of Machinists v. ________________________________________ NLRB, 362 U.S. 411, 419 (1960)(quoting H.R. Rep. No. 245, ____ 80th Cong., 1st Sess. 40); see Silver Bakery, Inc., 351 F.2d ___ ___________________ at 39. Under current law, the section 10(b) period begins to run when the "aggrieved individual has actual notice that an -9- 9 unfair labor practice has been committed." Esmarck, Inc. v. ________________ NLRB, 887 F.2d 739, 745 (7th Cir. 1989). An adverse ____ employment decision provides such notice. Id. at 745-46.  ___ Congress entrusted the Board with broad discretion for interpreting the Act and adjudicating unfair labor practice claims. See generally Commercial Workers Union, 484 _____________ ________________________ U.S. at 118-22; NLRB v. Rutter-Rex Mfg. Co., 396 U.S. 258, ____________________________ 262-63 (1969). To effectuate the purposes of the section 10(b) proviso, the Board has promulgated a series of rules and regulations. See 29 C.F.R. ch. I, pt. 102 (7-1-95 ___ Edition); see also 29 U.S.C. 156 ("The Board shall have ___ ____ authority . . . to make, amend, and rescind . . . such rules and regulations as may be necessary . . . ."). Chief among these is section 102.14, which provides:  Upon filing of a charge, the charging party shall be responsible for the timely and proper service of a copy thereof upon the person against whom such charge is made. The regional director will, as a matter of course, cause a copy of such charge to be served upon the person against whom the charge is made, but he shall not be deemed to assume responsibility for such service. 29 C.F.R. 102.14 (1995); see also 29 C.F.R. 101.4 ___ ____ (1995)(investigation of charges)("[T]imely service of a copy of the charge . . . is the exclusive responsibility of the charging party and not of the Regional Director."). Under section 102.14, charging parties such as appellant bear -10- 10 primary responsibility for service of unfair labor practice charges. While standard Board operating procedure dictates that regional offices serve charged parties with a copy of the charge filed against them, charging parties such as Kelley must ultimately ensure timely service. Charges are timely if mailed or personally served within the limitations period. See 29 C.F.R. 102.113(a); see also West v. ___ ___ ____ ________ Conrail, 481 U.S. 35, 38 n.3 (1987).  _______ In light of the 1947 amendments made to section 10(b) and Congress's intent to place practical time limits on the investigation and prosecution of unfair labor practices, Laborer's Int'l Union, 529 F.2d at 782-83, we hold that ______________________ section 102.14 is both a rational and reasonable exercise of the Board's discretion and rulemaking authority. Section 102.14 comports with the congressional policy against subjecting charged parties to suits brought more than six months after the occurrence of an alleged unfair labor practice. We do not think it unreasonable, given this and the Board's rather liberal construction of the section 10(b) proviso, to place the ultimate responsibility for timely service on the shoulders of the party who sets the Board's adjudicatory procedures in motion. See NLRB v. Wiltse, 188 ___ _______________ F.2d 917, 926 (6th Cir.), cert. denied sub nom. Ann Arbor _____ ______ ___ ____ __________ Press v. NLRB, 342 U.S. 859 (1951). _____________ -11- 11 Because we find that section 102.14 is a reasonable exercise of the Board's authority, appellant's request for relief may only be granted if appellant complied with the statute by providing constructive service of her charge within the section 10(b) period or the circumstances of this case are such that an application of equitable principles is warranted. We now consider whether, on the facts of this case, either ground for tolling the statute exists.  Actual Notice and Section 10(b)'s Service Requirement Actual Notice and Section 10(b)'s Service Requirement _____________________________________________________ Appellant maintains that she complied with the spirit, if not the letter, of section 10(b)'s service requirement and that the Board, therefore, erroneously dismissed her complaint. More specifically, she asserts that the August 30, 1993, demand letter provided DBS with actual notice of the charges against it. Both the Board and DBS reject this contention.  The basic proposition that actual notice of a charge may, in certain circumstances, satisfy section 10(b)'s requirements is undisputed. See Hospital & Service Employees ___ ____________________________ Union v. NLRB, 798 F.2d 1245, 1249 (9th Cir. 1986). Congress _____________ did not intend unfair labor practice charges to be held to the same "standards applicable to a pleading in a private lawsuit." NLRB v. Fant Milling Co., 360 U.S. 301, 307 ___________________________ (1959). The purpose of a charge is to set the Board's investigative machinery in motion, not to provide a full -12- 12 explication of the allegations leveled against a party. Id. ___ Charges are generally recorded on a blank form provided by the Board's regional office, see 29 C.F.R. 101.2 (1995), ___ and function primarily as a mechanism for extracting early and concise statements of the positions held by the charged and charging parties. See Service Employees Union, 798 F.2d ___ ________________________ at 1249; 29 C.F.R. 101.4. Complaints, on the other hand, are designed to give notice of the substantive issues underlying a charge. Service Employees Union, 798 F.2d at ________________________ 1249; see 29 C.F.R. 102.15 (1995).  ___ Nonetheless, we are not at all persuaded that the August 30, 1993, demand letter satisfies section 10(b)'s service requirements. First, despite appellant's assertions to the contrary, it is not settled that charge filing and service may be accomplished by two different documents containing similar information. The Board's Statements of Procedures and Rules and Regulations clearly require service with a copy of the charge actually filed with the Board. See, e.g., 29 C.F.R. 101.4, 102.14. Appellant's ___ ____ observation that the Board's Statements of Procedures do not require charges to be filed on a specific form has no bearing on this. See 29 C.F.R. 101.2. But even if service could ___ be accomplished with a charge which differs from the one filed with the Board, we find that the August 30, 1993, -13- 13 demand letter lacks the specificity typically required of charges brought pursuant to the Act.  The August 30, 1993, letter advances a host of claims against DBS, which include unfair labor practices, gender discrimination, and violation of the Federal Equal Pay Act, 29 U.S.C. 206(d)(1), the Federal Civil Rights Act, 42 U.S.C. 2000e et seq., and the Massachusetts Equal Rights __ ____ Act, Mass. Gen. L. ch. 93, 102, 103. It does not focus on the section 8(a)(1) violation and, thus, does not comply with the Board's requirement that charges provide a "clear and concise statement of the facts constituting the alleged unfair labor practices affecting commerce." 29 C.F.R.  102.12 (1995). Moreover, it did not, as the Board correctly notes, provide notice that a charge was actually filed with the Board. Because the letter was mailed more than a month before appellant filed her charge, it only notified DBS of the possibility that a charge would be filed. Compare Bihler _______ ______ v. Singer Co., 710 F.2d 96 (3d Cir. 1983)(letter discussing _____________ possibility of legal action not an EEOC charge). This, we think, falls short of what section 10(b) contemplates.  The Ninth Circuit's decision in Hospital & Service __________________ Employees Union v. NLRB, 798 F.2d 1245 (9th Cir. 1986), _________________________ provides no leverage for appellant's position. While the Ninth Circuit did hold that actual notice satisfies section 10(b)'s service requirements, 798 F.2d at 1249, it reached -14- 14 that conclusion on the basis of a set of facts entirely different from the one with which we are now presented. The court disregarded the fact that the charges were never received by the employer in that case because the complaint was both issued and served within the six-month limitations period and there was no claim of prejudice to the employer. Id. at 1249. In contrast, both the charge and the complaint ___ in this case were issued after the section 10(b) period elapsed. Additionally, the employer in Service Employees __________________ Union, after hearing from an unofficial source that charges _____ had been filed, contacted the Board about the investigation into its employment practices within the limitations period. Unlike DBS, which did not formally learn that Board proceedings had been initiated against it until after the six-month period prescribed by the Act had run, that employer received actual notice within the meaning of section 10(b).  For the reasons just stated, the other cases on which appellant seeks to rest her argument, Buckeye Mold & _______________ Die Corp., 299 N.L.R.B. 1053 (1990), and Freightway Corp. and _________ ____________________ Kaplan Enter., Inc., 299 N.L.R.B. 531 (1990), are also _____________________ inapposite. Buckeye, a case decided by the Board, explicitly _______ adopts the Ninth Circuit's reasoning in Service Employees _________________ Union. Buckeye, 299 N.L.R.B. at 1053. Accordingly, it does _____ _______ not reach cases in which the charge and complaint are both filed and served outside of the limitations period. It -15- 15 stands for the narrow holding that noncompliance with section 10(b)'s requirements for charge filing can be cured by timely service of a complaint. Id. Appellant's reliance on ___ Freightway also falls short of the mark. That case held that __________ service of an unsigned copy of a charge within the limitations period satisfies the statute because section 10(b) neither requires that the original signed charge nor a signed copy of that charge be mailed to the party against whom the allegations were made. Freightway, 299 N.L.R.B. at __________ 531. It does not, however, address whether service and filing can be accomplished by different original documents or what the contents of each document should be.  That Kelley's charge was served only one day after the section 10(b) deadline makes this a hard case. DBS was not seriously prejudiced by Kelley's untimely service. Nevertheless, we are unwilling to stretch existing precedent to find that DBS had actual notice of the charge filed against it when appellant has failed to comply with the requirements for charge content and has not cleared the hurdle of demonstrating that either her charge or complaint was filed within the limitations period. The Board's conclusion that appellant did not comply with section 10(b)'s service requirements, in spirit or letter, is supported by the record. See Simon v. Kroger Co., 743 F.2d 1544, 1546 ___ ____________________ (11th Cir. 1984), cert. denied, 471 U.S. 1075 (1985)("We find _____ ______ -16- 16 that the intent, spirit, and plain language of section 10(b) require that a complaint be both filed and served within the six month limitations period.").   Equitable Estoppel And Tolling Under Section 10(b) Equitable Estoppel And Tolling Under Section 10(b) __________________________________________________ Section 10(b)'s statute of limitations period is subject to equitable modification. Zipes, 455 U.S. at 395 _____ n.11. Two alternate, though closely related, doctrines have been developed to resolve the relatively small number of cases in which equitable modification is appropriate: equitable estoppel and equitable tolling. Kale, 861 F.2d at ____ 752; see also Guidry v. Sheet Metal Worker's Nat'l Pension ___ ____ ______________________________________________ Fund, 493 U.S. 365, 376 (1990)("[C]ourts should be loath to ____ announce equitable exceptions to legislative requirements or prohibitions that are unqualified by statutory text."); Earnhardt v. Commonwealth of Puerto Rico, 691 F.2d 69, 71 __________________________________________ (1st Cir. 1982)("Courts have taken a uniformly narrow view of equitable exceptions to . . . limitations periods."). They are appropriate only to avoid injustice in particular cases. See Heckler v. Community Health Services, 467 U.S. 51, 59 ___ ______________________________________ (1984); see also Cerbone v. Int'l Ladies Garment Worker's ___ ____ __________________________________________ Union, 768 F.2d 45, 47-48 (2d Cir. 1985).  _____ Courts invoke equitable estoppel when a defendant's conduct causes a plaintiff to delay bringing an action or pursuing a claim he or she was entitled to initiate by law. Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 61 (2d Cir. __________________________________ -17- 17 1986). In the section 10(b) context, it is most often applied when a plaintiff's untimely filing is caused by a defendant's deceptive conduct or by reasonable reliance on the defendant's misleading representations or information. See, e.g., Barnard Eng'g Co., Inc., 295 N.L.R.B. 226 (1989); ___ ____ ________________________ see also Kale, 861 F.2d at 752; Lavery v. Marsh, 918 F.2d ___ ____ ____ ________________ 1022, 1028 (1st Cir. 1990). It is not employed unless the plaintiff relies on his or her adversary's conduct and changes his or her position for the worse. See Community ___ _________ Health Services, 467 U.S. at 59; see also Precious Metal ________________ ___ ____ ______________ Assoc., Inc. v. Commodity Futures Trading Comm'n, 620 F.2d __________________________________________________ 900, 908 (1st Cir. 1980)(citing Bergeron v. Mansour, 152 F.2d ___________________ 27, 30 (1st Cir. 1945)).  Equitable tolling, in contrast, encompasses a broader range of conduct, Kale, 861 F.2d at 752, and is ____ "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his [or her] hands." Heideman v. PFL, Inc., 904 F.2d 1262, 1266 (8th Cir. _____________________ 1990), cert. denied, 498 U.S. 1026 (1991). Cases in which _____ ______ the equitable tolling doctrine is invoked are most often characterized by some affirmative misconduct by the party against whom it is employed, such as an employer or an administrative agency. Id. Courts generally weigh five ___ factors in assessing claims for equitable tolling: "(1) lack of actual notice of the filing requirement; (2) lack of -18- 18 constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." Kale, 861 ____ F.2d at 752-53 (citing cases).  Appellant asserts that grounds for applying both the equitable estoppel and equitable tolling doctrines exist in this case. We find no basis for appellant's contention that equitable estoppel is appropriate because DBS caused the delay in the filing of her charge. In fact, the record makes it apparent that the delay, with respect to DBS's conduct at least, was caused by appellant's counsel's attempt to obtain a pre-charge settlement from DBS. We do not, of course, disparage settlement strategies of the sort employed by appellant's counsel. Prompt disposition of disputes is consistent with the purposes of the Act, see Service ___ _______ Employees Union, 798 F.2d at 1249, and the interests of our _______________ legal system as a whole. But, having made the decision to pursue an early settlement with DBS, appellant, who is represented on appeal by the same counsel who prepared the August 30, 1993, demand letter and who represented her before the Board, cannot reasonably expect us now to cure the defects in her settlement strategy. Though DBS requested an extension beyond the September 17, 1993, settlement deadline initially established by appellant's counsel, there is no -19- 19 evidence in the record that it engaged in deceptive conduct or unfairly led appellant to believe that it intended to settle. Compare Cerbone, 768 F.2d at 48-50 (reliance on _______ _______ settlement promise); Kanakis Co., Inc., 293 N.L.R.B. 50 ___________________ (1989)(perjured testimony by defendant); see also Dillman, ___ ____ _______ 784 F.2d at 61. Nothing precluded appellant's counsel from initiating Board proceedings against DBS; she was free at every moment relevant to this appeal to suspend settlement negotiations and to file a charge with the Board. That appellant's counsel notified DBS, on September 27, 1993, she was withdrawing the settlement offer and taking steps to file a charge with the Board highlights this point.  Appellant's position was not substantially changed by the ten-day delay in filing worked by DBS's request for an extension of time. When appellant's attorney withdrew the settlement offer made to DBS, more than two weeks remained within the section 10(b) period, enough time for appellant to both file a charge with the Board and serve a copy on DBS. Thus, to the extent that this case may involve a delay that was outside of appellant's control, we find that the record supports the Board's conclusion that it was not caused by DBS. The contention that equitable tolling should be invoked against the Board, however, presents a different question. It is axiomatic that "the grounds for tolling -20- 20 statutes of limitations are more limited in suits against the government . . . ." Swietlik v. United States, 779 F.2d __________________________ 1306, 1311 (7th Cir. 1985); see generally Falcone v. Pierce, ___ _________ _________________ 864 F.2d 226, 228-29 (1st Cir. 1988). The main thrust of appellant's equitable tolling argument is that the blame for the untimely service of her charge lies with the Board and the employee who failed to inform her attorney that section 102.14 places the ultimate responsibility for charge service on the charging party. She alleges, in fact, that the Board employee specifically instructed her attorney not to serve DBS with a copy of the charge.  Although we agree that the Board employee's statement of Board procedure was incomplete and perhaps misleading, we do not agree that the delay at issue in this case can be wholly attributed to an error on the part of the Board. The record shows that the Board employee neglected to call appellant's attention to section 102.14, but does not support appellant's contention that her counsel was explicitly prohibited from serving DBS with the charge. Thus, to the extent that the Board did commit an error in this case, it did not rise to the level of agency error which has required the application of equitable tolling in other cases. Compare Page v. U.S. Indus., 556 F.2d 346 (5th Cir. _______ ____________________ 1977)(EEOC erroneously sent misleading letter), cert. denied, _____ ______ 434 U.S. 1045 (1978); Bracey v. Helene Curtis, 780 F. Supp. _______________________ -21- 21 568 (N.D. Ill. 1982)(EEOC miscalculation of filing date); Roberts v. Arizona Bd. of Regents, 661 F.2d 796 (9th Cir. ___________________________________ 1981)(EEOC affirmatively misconstrued own regulations).  The emphasis placed on the allegations of agency error obscures the fact that appellant fails to meet all but one of the equitable tolling requisites. Although appellant did not receive actual notice of section 102.14, we find that she did have constructive notice of it and its requirements because she was represented by counsel at the time of the delayed service to DBS. Courts generally impute constructive knowledge of filing and service requirements to plaintiffs who, like appellant, consult with an attorney. See Jacobson ___ ________ v. Pitman-Moore, Inc., 573 F. Supp. 565, 569 (D. Minn. 1983); _____________________ see also Lopez v. Citibank, N.A., 808 F.2d 905, 907 (1st Cir. ___ ____ _______________________ 1987); Edwards v. Kiser Aluminum & Chem. Sales, Inc., 515 ________________________________________________ F.2d 1195, 1200 n.8 (5th Cir. 1975); Leite v. Kennecott ___________________ Copper Corp., 558 F. Supp. 1170, 1174 (D. Mass.), aff'd 720 ____________ _____ F.2d 658 (1st Cir. 1983). Appellant's attorney had full access to the Board's rules and regulations and could have initiated service on DBS within the section 10(b) period. That she was unfamiliar with Board regulations, in and of itself, is not an excuse for failure to comply with section 10(b)'s requirements. NLRB v. Washington Star Co., 732 F.2d ___________________________ 974, 975 (D.C. Cir. 1984). The general rule is that "those who deal with the Government are expected to know the law and -22- 22 may not rely on the conduct of Government agents contrary to law." Community Health Services, 467 U.S. at 63; see also _________________________ ___ ____ Falcone, 864 F.2d at 230; Kale, 861 F.2d at 754.  _______ ____ Our holding that appellant had constructive knowledge of the Board's rules and regulations is further supported by the duration of the representation she enjoyed. Jacobson, 573 F. Supp. at 570 ("[T]he duration of the ________ attorney-client relationship . . . is the key factor in determining whether equitable tolling should apply."). The record reveals that appellant received extensive representation over an extended period of time. Appellant's attorney wrote and mailed the August 30, 1993, demand letter to DBS, contacted the Board about its procedures, filed the charge with the Board, and then later represented appellant during Board proceedings. We are not persuaded by appellant's attempt to characterize the assistance she received as "limited." This is not a case in which a mere technicality prevents a layperson from successfully navigating a complicated regulatory process. Compare Vanity _______ ______ Fair Mills, Inc., 256 N.L.R.B. 1104 (1981); Abbott v. Moore ________________ ________________ Business Forms, Inc., 439 F. Supp. 643 (D.N.H. 1977); see _____________________ ___ also Love v. Pullman, 404 U.S. 522, 525-27 (1972). Nor are ____ _______________ we persuaded by the argument appellant makes with regard to the two remaining equitable tolling factors. While we take note of the fact that attorneys frequently contact -23- 23 administrative agencies about their rules and regulations directly, we cannot agree that appellant's attorney's reliance on the information provided by the Board was reasonable. We think it plain that an attorney's reliance on oral information, provided over the telephone and by a low- level employee, is not reasonable. See Community Health ___ _________________ Services, 467 U.S. at 65; Falcone, 864 F.2d at 230-31. Such ________ _______ information, almost by definition, is not nearly as reliable as simply looking up the text of a regulation. Community _________ Health Services, 467 U.S. at 65. We also think it plain that _______________ appellant failed to exhaust the options for compliance with the -24- 24 section 10(b) proviso. Neither appellant nor her attorney made any attempt to mail or personally deliver a copy of the charge to DBS. In fact, they failed even to contact the Board about the status of the charge after it was filed on October 6, 1993. Had they done so, they might have been alerted to the problem with the charge and might have avoided the section 10(b) violation. That no real prejudice flowed to DBS as a result of the untimely filing lends some appeal to appellant's argument. The effect of the Board's order dismissing appellant's complaint is that the merits of her unfair labor practice claim against DBS will never be decided. We appreciate the difficulty this poses for appellant, but are mindful of the Court's holding in Baldwin County Welcome _______________________ Center v. Brown, 466 U.S. 147 (1984), that the absence of _______________ prejudice "is not an independent basis for invoking the [equitable tolling] doctrine and sanctioning deviations from established procedures." Id. at 152. We hold, therefore, ___ that the Board properly refused to invoke equitable estoppel and tolling in this case.   III. III. CONCLUSION CONCLUSION __________ For the reasons stated above, the order dismissing appellant's complaint for untimely service of the charge is affirmed. Because there are no outstanding issues of ________ -25- 25 material fact, the Board properly granted DBS's joint Motion to Dismiss and Motion for Summary Judgment. No costs to either party. No costs to either party ________________________ -26- 26