Walter J. BARTUS

v.

UNITED STATES of America.

Civil Action No. 95–30245–MAP.

United States District Court, D. Massachusetts.

July 19, 1996.

Stephen R. Kaplan, Northampton, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM REGARDING
DEFENDANT'S MOTION
TO DISMISS*

(Docket No. 3)

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiff Walter J. Bartus filed this negligence action against the Department of Veterans Affairs ("VA") on November 21, 1995. The Government has filed a motion to dismiss the complaint on the ground that Bartus did not file a timely administrative claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. This memorandum will address the Government's motion.

## II. *STANDARD*

■■■■ If on a motion to dismiss for failure to state a claim the court considers materials outside the pleadings, the motion will be treated as one for summary judgment. Fed. R.Civ.P. 12(b). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of producing affirmative evidence, or pointing to a lack of evidence, showing that no genuine issue of material fact exists. Assuming the moving party meets this burden, the nonmoving party must go beyond the pleadings and show the existence of a genuine issue for trial. All the evidence must be taken in the light most favorable to the nonmoving party. *Blackie v. State of Maine,* 75 F.3d 716, 721 (1st Cir.1996).

## III. *FACTUAL AND PROCEDURAL BACKGROUND*

The facts, viewed in the light most favorable to plaintiff, are as follows.

Bartus alleges that on July 22, 1992, doctors at the VA Medical Center in White River Junction, Vermont, negligently performed surgery on his prostate gland, resulting in a series of medical complications, including permanent aggravation of his asthma.

In February 1993, Bartus contacted attorney Robert Astor about filing a negligence suit against the Government. On or about May 17, 1993, after some preliminary fact-finding, Astor told Bartus that he would not pursue the case further.

On or about July 6, 1993, Bartus spoke with Arthur Gueguen, a VA benefits counselor in Northampton, Massachusetts, about filing a negligence claim against the VA. Gueguen told Bartus that he would file the claim on Bartus's behalf and that Bartus would not have to pay for this service. The claim was filed on July 7, 1993.

Here is where the gremlin in this case makes its unfortunate appearance. Two categories of relief are available to veterans who sustain injuries at a VA medical center: (1) damages for negligence under the FTCA and (2) disability benefits for negligence under 38 U.S.C. § 1151. As noted above, Bartus intended to file a negligence claim for damages under the FTCA. But, heeding the benefit counselor's instructions, he filled out a § 1151 form for disability benefits.

By letter dated September 2, 1993, the VA informed Bartus that there would be a delay on his claim. It explained that a recent Court of Veterans Appeals decision had voided VA regulations "concerning tort claims for claims filed as a result of a disability which was incurred or aggravated during VA-authorized medical examinations, treatment or vocational rehabilitation." It said that a final decision on Bartus's claim would be delayed until new regulations governing his alleged injuries were adopted. It added: "There is nothing more you need to do at this time."

About 22 months later, on June 25, 1995, Bartus was told that his claim for disability benefits had been denied. At that point, Bartus realized he had filed the wrong claim form. He contacted his present counsel and, on April 24, 1996, filed the proper FTCA form with the VA. The VA later denied the claim as time-barred. Bartus then proceeded to file this lawsuit.

## IV. *DISCUSSION*

Before filing a suit against the federal government, a claimant must give written

notice, identifying a sum certain, to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b); *Kokaras v. United States,* 980 F.2d 20, 22 (1st Cir.1992). Bartus's § 1151 filing clearly did not satisfy this requirement. The question is whether Bartus made his second filing, which did satisfy the FTCA, before the statute of limitations expired. The Government says he did not. Bartus urges the court to apply the doctrine of equitable tolling to suspend the statute of limitations for the period during which he was reasonably unaware of the FTCA filing requirement. So viewed, he argues, his second filing would have been timely.

In *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court extended the doctrine of equitable tolling to cases filed against the federal government. In reaching this decision, the Court stressed that the doctrine should be applied "sparingly":

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Id.* at 96, 111 S.Ct. at 458 (footnotes omitted).

 The First Circuit, echoing the Court's decision in *Irwin,* has strictly limited the availability of equitable tolling in cases against the Government. The court has identified several factors that weigh in favor of equitable tolling: (1) plaintiff's reasonable lack of actual or constructive knowledge of filing requirements; (2) plaintiff's diligent pursuit of his rights; (3) absence of prejudice to defendant; and (4) plaintiff's reasonable unawareness of any filing requirements. *Kelley v. N.L.R.B.,* 79 F.3d 1238, 1248 (1st Cir.1996). As these factors suggest, the First Circuit deems equitable tolling an "exceptional doctrine," generally available to only the most vigilant, or possibly deceived, parties. *Wilson v. United States,* 23 F.3d 559, 561–62 (1st Cir.1994).

*Kelley,* on which the Government relies, illustrates this point. Kelley sought review of a National Labor Relations Board order dismissing her complaint for failure to serve the charge on her former employer within the statutory period. Kelley missed the filing deadline because a Board employee mistakenly told her attorney that the Board would serve the charge. The First Circuit affirmed. The court refused to toll the statute of limitations, reasoning that the delay was not "wholly attribut[able] to an error on the part of the Board." In view of her representation by counsel, the court found that Kelley had constructive knowledge of the Board's service requirements and unreasonably relied on the Board employee's oral information. 79 F.3d at 1249–50.

The Government seeks to draw a parallel between *Kelley* and this case. First, in light of Bartus's prior consultation with an attorney, the Government urges the court to impute constructive knowledge of the FTCA's administrative filing requirement to Bartus. Second, taking the facts in the light most favorable to Bartus, the Government contends that, at most, the VA innocently misinformed Bartus about proper FTCA procedures. The Government contends that, even assuming the VA made such a mistake, *Kelley* instructs that Bartus must pay the price of this innocent misunderstanding.

 The Government's reasoning, though certainly colorable, is not persuasive. There is no evidence that Bartus ever had actual or constructive knowledge of the FTCA's administrative filing requirement before June 25, 1995. On May 17, 1993, almost two months before he spoke with the benefits counselor, Bartus contacted, and was turned away by, an attorney. In light of the VA benefit counselor's assurance that no attorney was necessary, this is not a case where a plaintiff slept on his rights or unreasonably remained ignorant of the proper filing procedures.

Moreover, at least one federal court of appeals has resolved this precise issue against the Government. In *Glarner v. United States,* 30 F.3d 697 (6th Cir.1994), a

veteran contacted a VA employee about filing an action for damages against the government.[1] Per the employee's instructions, Glarner filled out a § 1151 form; and the claim for disability benefits made its way through the administrative process and was eventually denied. Later, after he became aware of the mistake, Glarner filed suit in district court. The trial court dismissed the action as barred by the statute of limitations, and the Sixth Circuit reversed. The court held that the VA failed to provide Glarner with the proper form in violation of VA regulations, and concluded that equitable tolling was an appropriate remedy. *Id.* at 701–02.

The Government challenges the significance of *Glarner* and disputes the Sixth Circuit's reliance on 38 C.F.R. § 14.604(a), which provides in part:

> Each person who inquires as to the procedure for filing a claim against the United States, predicated on a negligent or wrongful act or omission of an employee of the Department of Veterans Affairs acting within the scope of his or her employment, will be furnished a copy of SF 95, Claim for Damage, Injury, or Death. The claimant will be advised to submit the executed claim directly to the District Counsel having jurisdiction of the area wherein the occurrence complained of took place.

This regulation applies to VA's general counsel, whose responsibilities include "[m]aintenance of a system of field offices capable of providing legal advice and assistance to all Department of Veterans Affairs field installations." *Id.* at § 14.500(e). Despite Gueguen's professed ignorance of FTCA claims procedures, the VA arguably holds a duty to train its benefits counselors to provide, or at least refer parties to someone who can provide, the appropriate form to veterans contemplating a negligence suit against the Government. At the very least, this regulation, taken in light of all the facts, which must be construed in plaintiff's favor, is a factor to be considered in the decision to apply equitable tolling here.

Notwithstanding *Glarner,* the Government contends that the VA benefits counselor did not engage in the sort of affirmative misconduct required for equitable tolling. The Government misstates the standard. A claimant need not necessarily show affirmative misconduct to avail himself of equitable tolling; rather, he must show that failure to meet a filing deadline was, in a phrase, "out of his hands." *See Kelley,* 79 F.3d at 1248. Affirmative misconduct is, to be sure, one means of taking a claim out of a plaintiff's hands, but it is not the only means.

One wonders how Bartus could have been expected to avoid the consequences of the *misinformation* he received. After an attorney had refused his case, Bartus spoke with a VA benefits counselor about filing a negligence claim against the Government. He was told that the VA would handle the paperwork for him and that he did not need to hire an attorney. Apparently, neither Bartus nor the benefits counselor understood the difference between a negligence claim for damages and a negligence claim for disability benefits; the counselor asked Bartus to complete a § 1151 form, the wrong form. Thereafter, the VA notified Bartus by letter to expect a delay on his "tort claim." This letter did not, and realistically could not, put Bartus on notice that he had used the wrong claim form. When the VA assured Bartus that "[t]here is nothing more you need to do at this time," he reasonably took the agency at its word. Months later, after a long delay over which Bartus had no control, the misunderstanding came to light.

It would be distinctly unfair to allow this bureaucratic snafu to foreclose plaintiff's claim. Put another way, taking the facts in the light most favorable to plaintiff, this court finds: (1) Bartus did not have actual or constructive knowledge of the FTCA's filing requirements; (2) he diligently pursued his rights; (3) in light of the VA's unintentionally misleading communications, Bartus reasonably remained unaware of proper FTCA procedures until the VA denied his § 1151 claim; and (4) the VA will not be prejudiced if

---

1. Counsel for the Government, not the plaintiff, first brought *Glarner* to this court's attention. This voluntary disclosure is characteristic of the high ethical standards exhibited by Assistant United States Attorney Goodwin and by the U.S. Attorney's Springfield office generally.

Bartus is allowed to move forward with this case. The Government's motion will be denied.

Bartus sustained his alleged injuries on July 22, 1992. He made a proper filing with the VA on April 24, 1996, about three years and nine months later. However, the statute of limitations was tolled for almost two years—from July 7, 1993, when Bartus filed the § 1151 form, to June 25, 1995, when he received word that his claim for disability benefits had been denied. Accordingly, Bartus filed his claim well within the FTCA's two-year statute of limitations. He may proceed with his case.

## V. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is hereby DENIED.